THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS BLACKWELL, Defendant-Appellant.

First District (2nd Division)   No. 1—99—4064

Opinion filed September 18, 2001.

Michael J. Pelletier and Sarah M. Jacoby, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, Alan Spellberg, and Jennifer K. Bagby, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

Following a bench trial, defendant, Marcus Blackwell, was found guilty of first degree murder and attempted murder. He was sentenced consecutively to 84 years' imprisonment for the first degree murder conviction and to 27 years' imprisonment for the attempted murder conviction. The trial court imposed an extended-term sentence for the murder under section 5—5—3.2(b)(4)(ii) of the Unified Code of Corrections on the basis that the murder victim was 71 years old. 730 ILCS 5/5—5—3.2(b)(4)(ii) (West 1998). The trial court also determined that defendant was eligible for consecutive sentences under section 5—8—4(b) of the Unified Code of Corrections because defendant inflicted severe bodily harm on the attempted murder victim. 730 ILCS 5/5—8—4(b) (West 1998).

Defendant appeals on the grounds that his extended-term sentence and consecutive sentences are unconstitutional under *Apprendi v.*

*New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Defendant further claims that his sentences were excessive based on his young age, lack of criminal record, and rehabilitative potential.

The record below revealed the following facts. On July 9, 1997, Mary Harris, age 71, was shot in front of her home located at 1608 South 19th Street, Maywood, Illinois. Kerry Rouse, a teenager, was also shot in his side during the same shooting. As a result of the gunshots, Harris died and Rouse was severely injured.

The record further indicated that the shots were fired by defendant, who, along with three other black males, conducted a drive-by shooting in the intersection of 19th and Van Buren Streets in Maywood. Testimony in the record revealed that the shooting was motivated by a rivalry between two gangs known as the Four Corner Hustlers and the Blackstones.

Brian Holmes testified that he and defendant were both members of the Four Corner Hustlers. On July 7, 1997, Holmes stated that he, Walter Blount, Keshan Huston, and defendant were driving around Maywood when they saw Brian Moore, a fellow Four Corner Hustler. Blount, who was driving the car, pulled the car over so that they could converse with Moore. Moore claimed to have been shot at by the Blackstones. After conversing with Moore, Holmes testified that the same four drove off to retrieve a gun. According to Holmes, defendant retrieved a .38-caliber handgun from the bushes in the alley at 16th Street. Defendant put the weapon under his shirt and got back into the car. Holmes said that the gun was retrieved in order to shoot at the Blackstones who hung out at the corner of 20th and Van Buren Streets.

Holmes testified that the four drove by the intersection of 19th and Van Buren Streets several times as they examined a crowd of eight or nine people standing south of the intersection. Rouse testified that the crowd was about 10 feet away from the front door of Mary Harris' residence. On the fifth pass, Blount slowed the vehicle down and stated, "I think that's them." At that time, defendant fired five or six shots at the crowd from the vehicle's window. After the shots were fired, the four sped away rapidly from the scene.

Rouse testified that, prior to the shooting, Harris was standing in her doorway and was attempting to move the crowd away from the front of her home. Samuel Davis, Harris' common law husband, stated that Harris was 71 years old. He further said that late in the evening on July 9, 1997, Harris came into the bedroom and told him that she had been shot. She then fell to the floor and was taken to the hospital, where she was pronounced dead of a gunshot wound to the chest. Rouse stated that he was shot in the side of his body and that he

spent approximately six weeks in the hospital recovering from the gunshot wound.

The police ultimately arrested defendant, Blount, and Holmes. In exchange for his testimony against defendant and Blount, Holmes received a six-year prison sentence. Defendant and Blount were tried separately. After hearing all of the evidence, the trial judge found defendant guilty of first degree murder and attempted murder. Defendant was sentenced consecutively to 84 years' imprisonment for the first degree murder conviction and to 27 years' imprisonment for the attempted murder conviction. As noted above, the trial court imposed an extended-term sentence for the murder under section 5—5—3.2(b)(4)(ii) of the Unified Code of Corrections on the ground that the murder victim was 71 years old. 730 ILCS 5/5—5—3.2(b)(4)(ii) (West 1998). The trial court also concluded that defendant was eligible for consecutive sentences under section 5—8—4(b) of the Unified Code of Corrections because defendant inflicted severe bodily harm on the attempted murder victim. 730 ILCS 5/5—8—4(b) (West 1998). We affirm the trial court for the following reasons.

■ The constitutionality of extended-term sentencing under the *Apprendi* decision was recently addressed by this court in *People v. Vida*, 323 Ill. App. 3d 554 (2001). In *Vida*, the State first argued, as it does here, that defendant waived the issue by failing to raise it in the trial court. The *Vida* court disagreed, citing *People v. Wright*, 194 Ill. 2d 1, 23, 740 N.E.2d 755, 766 (2000) (holding that defendants' argument was not waived because the constitutionality of a statute may be raised at any time). *Vida*, 323 Ill. App. 3d at 567. Thus, we conclude that defendant has not waived the issue.

We note that in *Apprendi*, cited above, the Supreme Court held a New Jersey statute unconstitutional that allowed a judge to increase the sentencing range for an offense where the court found that the defendant committed the crime with the purpose of intimidating an individual or group based on a particular characteristic. Specifically, the Supreme Court stated, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum [for the relevant offense] must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

As pointed out above, the trial court in the instant case imposed an extended-term sentence based on the fact that the victim's age exceeded 60 years at the time of the offense. In his brief, defendant maintains that the trial court's failure to submit to a jury the question of the victim's age as it pertained to extended-term sentencing was unconstitutional under *Apprendi*.

The State maintains that the sentencing range for first degree murder can be 20 years' imprisonment up to and including the death penalty. Several Illinois cases have rejected that same argument. Those cases have held that the maximum statutory penalty for first degree murder is that provided in section 5—8—1(a)(1)(a) of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(1)(a) (West 1994) (stating that a term shall be not less than 20 years and not more than 60 years)), and that the imposition of an extended-term sentence based on a finding by the trial court that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty violates *Apprendi* where such findings are based on a relaxed evidentiary standard. See, *e.g.*, *People v. Beachem*, 317 Ill. App. 3d 693, 708, 740 N.E.2d 389 (2000) (holding that 60 years is the "the prescribed maximum sentence for first degree murder in this State" and that an extended-term sentence of more than 60 years that is based on a finding of exceptionally brutal and heinous behavior "clearly offends" *Apprendi*).

We also recognize that another division of this court, in *Vida*, 323 Ill. App. 3d at 566-73, recently held instead that the statutory sections regarding extended-term sentencing and sentences of imprisonment for a felony should be read together as part of an overall sentencing scheme for murder when determining the statutory range of possible penalties for first degree murder. Under such an approach, an extended-term sentence imposed upon a judicial finding at sentencing that a statutory aggravating factor existed would not necessarily violate *Apprendi*. Thus, there is a split in authority in this district regarding how the maximum statutory penalty for first degree murder is to be determined. We need not adopt either of the approaches taken in the above cases, however, because even assuming an *Apprendi* violation occurred, we find it to be harmless error.

We recently addressed whether the failure to present proof of the victim's age under *Apprendi* could be subject to the harmless error rule in *People v. Peacock*, 324 Ill. App. 3d 749 (2001). We concluded in that case that, although an *Apprendi* violation may have occurred where the age of the victim was not presented to the trier of fact as part of the indictment and subjected to proof beyond a reasonable doubt, any violation that did occur was harmless error and defendant's extended-term sentence was affirmed. *Peacock*, 324 Ill. App. 3d at 759. Our reasoning was based on a review of the following cases.

In *United States v. Nance*, 236 F.3d 820, 825, (7th Cir. 2000), the court found an *Apprendi* violation where the defendant was subjected to a sentence in excess of the default statutory maximum based on a finding by the trial court at sentencing regarding the amount of drugs

involved. The court went on to hold that the failure to include an amount of drugs in the indictment and to submit that issue to a jury for proof beyond a reasonable doubt was subject to harmless error analysis. *Nance*, 236 F.3d at 825-26. The question to be asked, the court held, was whether it was clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *Nance*, 236 F.3d at 825. The court answered this inquiry in the affirmative and upheld defendant's sentence. *Nance*, 236 F.3d at 826.

Likewise, in *People v. Anderson*, 236 F.3d 427 (8th Cir. 2001), the defendant was found guilty of conspiring to manufacture methamphetamine based on an instruction that told the jury it need only find a "measurable amount" of methamphetamine to convict, rather than a specific amount. At sentencing, the trial court made a finding that the conspiracy intended to manufacture more than 50 grams of methamphetamine. Based on its finding, the court sentenced the defendant to 30 years' imprisonment, more than the maximum 20-year sentence allowed where only a "measurable amount" of methamphetamine was involved. Upon review, the court determined that although the imposition of the 30-year sentence contravened the rule in *Apprendi*, it was harmless beyond a reasonable doubt where no rational jury could have found the appellants guilty of the substantive offense and at the same time found that the amount of methamphetamine the conspiracy sought to produce was less than the amount necessary to support the sentence ultimately imposed by the court. *Anderson*, 236 F.3d at 429-30.

Finally, in *People v. Rohlfs*, 322 Ill. App. 3d 965 (2001), the defendant contended that his extended-term sentence violated *Apprendi* where it was imposed based on age of the victim and that fact was not submitted to a jury and proved beyond a reasonable doubt. The Fourth District held that the failure to ask the jury to determine the victim's age may have been harmless error where the victim testified she was 93 years old, there was no dispute regarding her age, and no reasonable jury could have found her to be under the age of 60. *Rohlfs*, 322 Ill. App. 3d at 972. Although the court in *Rohlfs* ultimately affirmed the extended-term sentence on a different basis, we conclude its analysis of the age issue to be relevant to our decision.

■ In the instant case, an extended-term was imposed based on at least one aggravating factor that the deceased victim was 60 years of age or older. "A trial court need find only a single statutory factor in aggravation to impose an extended sentence." *People v. Benkowski*, 215 Ill. App. 3d 615, 621, 575 N.E.2d 587 (1991). During the trial in the instant case, Davis testified that Harris was 71 years old at the time of her death. Such fact was undisputed by the parties and the

finding by the trial court did not involve a weighing of evidence or an examination of defendant's mental state. We determine, therefore, that had the issue of the victim's age been submitted to a jury, a jury would have still found defendant guilty beyond a reasonable doubt. As a result, although an *Apprendi* violation may have occurred here where the age of the victim was not submitted to a jury, such violation amounted to harmless error and defendant's extended-term sentence for first degree murder is affirmed.

■ Defendant next claims that the consecutive sentences imposed by the trial judge were unconstitutional under *Apprendi*. The constitutionality of the consecutive sentencing statute under the *Apprendi* decision was addressed by our supreme court in *People v. Wagener*, 196 Ill. 2d 269 (2001). See 730 ILCS 5/5—8—4(b) (West 1998). As we noted above, "a party may challenge the constitutionality of a statute at any time." *Wagener*, 196 Ill. 2d at 279. Thus, defendant has not waived this question based on his failure to raise it in the trial court as suggested by the State.

In *Wagener*, the court observed that "*Apprendi* explicitly disclaimed any holding regarding consecutive sentencing" and that "decisions holding that consecutive sentencing triggers *Apprendi* concerns are extending that case beyond its facts." *Wagener*, 196 Ill. 2d at 284-85. The court further recognized that "[i]t is a settled rule in this state that sentences which run consecutively to each other are not transmuted thereby into a single sentence. [Citations]." *Wagener*, 196 Ill. 2d at 286. Thus, we find that *Apprendi*, which only addressed sentences for individual crimes, is not implicated in the instant case. *Wagener*, 196 Ill. 2d at 286.

Defendant here was sentenced to an extended term of 84 years' imprisonment for murder. We concluded above that such sentence was within the proper sentencing range. The applicable sentencing range for attempted murder is not less than 6 years and not more than 30 years. 730 ILCS 5/5—8—1(3) (West 1998). The trial judge sentenced defendant to 27 years for attempted murder. The judge further found that, based on the severe harm caused to the injured victim, a consecutive sentence for attempted murder was proper. See 730 ILCS 5/5—8—4(b) (West 1998). We note that the trial judge's sentences for murder and for attempted murder were within the statutory sentencing range. That is all that is required by *Apprendi*. *Wagener*, 196 Ill. 2d at 287-88. Thus, the trial court's judgment is affirmed on the question of consecutive sentencing.

■ Defendant next claims that his sentences were excessive on the grounds that he was young at the time of the offense, did not have a significant criminal record, was enrolled in school, maintained strong

family connections, and possessed a strong potential for rehabilitation. We apply an abuse of discretion standard when evaluating a sentencing order. *People v. Maldonado*, 240 Ill. App. 3d 470, 485, 608 N.E.2d 499 (1992). The supreme court has stated, "our decisions have firmly established that the imposition of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. [Citations.]" *People v. Perruquet*, 68 Ill. 2d 149, 153, 368 N.E.2d 882 (1977). Moreover, when the sentence chosen by the trial court falls within the statutory range permissible for the pertinent criminal offense for which the defendant has been convicted, the sentence will not be disturbed absent an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 373, 659 N.E.2d 1306 (1995). "The reviewing court will find an abuse of discretion 'only if the judgment of the trial court is manifestly unjust or palpably erroneous.' [Citation.]" *People v. Dotson*, 214 Ill. App. 3d 637, 648, 574 N.E.2d 143 (1991).

Defendant claims that the trial court abused its discretion in imposing sentences on defendant because it failed to consider mitigating factors such as defendant's age, absence of significant criminal record, matriculation in school, close family ties, and rehabilitative potential. The record reveals, however, that the trial court did consider factors in mitigation and allowed the mitigation testimony of defendant's mother, brother, cousin, and attorney.

We note that "[t]he seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record, and the [sentencing] statute does not mandate that the absence of aggravating factors requires the minimum sentence be imposed. [Citation.]" *People v. Redmond*, 265 Ill. App. 3d 292, 307, 637 N.E.2d 526 (1994). "Nor is the trial court required to accord greater weight to defendant's potential for rehabilitation than to the seriousness of the crime. [Citations.]" *People v. Boclair*, 225 Ill. App. 3d 331, 335-36, 587 N.E.2d 1221 (1992). In this case, the trial court did consider mitigating factors which were weighed against the severity of defendant's crimes which resulted in the death of a senior citizen and severe injury to a young man. Based on the facts in this case, we do not find the sentences imposed upon defendant to be manifestly unjust or palpably erroneous. Thus, we conclude that the trial court did not abuse its discretion in regard to sentencing defendant.

Moreover, we are not persuaded by the sentences imposed upon other criminal defendants in the unrelated authority relied on by defendant. The supreme court has stated that, "[i]f a sentence is appropriate given the particular facts of that case, it may not be at-

tacked on the ground that a lesser sentence was imposed in a similar, but unrelated, case." *People v. Fern*, 189 Ill. 2d 48, 62, 723 N.E.2d 207 (1999). We also note that the trial judge sentenced defendant within the applicable range for the convictions of first degree murder and attempted murder.

The judgment of the trial court is affirmed.

Affirmed.                                                          . . .

GORDON and COUSINS, JJ., concur.