THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIN N. THUROW, Defendant-Appellant.

Third District   No. 3—99—0784

Opinion filed January 5, 2001.

Santiago A. Durango, of State Appellate Defender's Office, of Ottawa, and Michael H. Vonnahmen, of Springfield, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and John Wood, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The defendant, Erin Thurow, was charged with involuntary manslaughter of a family or household member (720 ILCS 5/9—3(f) (West

1998)). The jury was instructed on the elements of simple involuntary manslaughter (720 ILCS 5/9—3(a) (West 1998)), and she was found guilty. At sentencing, the judge found that the defendant was eligible for both an extended-term sentence, due to the tender age of the victim (730 ILCS 5/5—5—3.2(b)(4)(i) (West 1998)), and an enhanced sentence based on the victim being a family or household member. The court sentenced her to eight years in prison. The issue on appeal is whether the judge's consideration of extended-term and sentencing enhancement factors violate the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We affirm in part, vacate in part, and remand for further proceedings.

## Facts

In November 1997, Erin Thurow and her three-year-old daughter, Tianna, were living in a homeless shelter in Elgin, Illinois. At the shelter they met Michelle Mostowski, who was pregnant. The two women became friends. In early December 1997, Erin and her daughter moved to an apartment in Joliet, and on Christmas Eve Mostowski moved into the defendant's apartment. From late December 1997 until April 1998, the defendant was the sole financial support of the women and her daughter. In April 1998, the defendant was in the delivery room with Mostowski when her son Michael was born. After Michael's birth, the defendant continued to provide the only income, and Mostowski would watch both the children.

In September 1998, Mostowski returned to work. At times the women's shifts overlapped, and they had to find babysitters for their children. Finally, in January 1999, they decided to work separate shifts, so that each could look after the other's child. Mostowski worked from 7 a.m. until around 3 p.m. at a local Burger King; the defendant worked from 4 p.m. until midnight at a local McDonald's. Apparently all was well between the two women except that the defendant believed Mostowski spoiled her infant son. The two argued occasionally about this between the months of September 1998 and January 1999. The defendant also told Mostowski that she had trouble consoling Michael after Mostowski went to work and that his constant crying was upsetting her.

On February 5, 1999, the defendant was very ill. She was treated at the emergency room for dehydration, bronchitis, a sinus infection and a throat infection. She left home for the weekend to visit family in Elgin and get some rest. When she returned on Monday, she went back to work. Between Monday afternoon and Thursday morning she worked three shifts, for a total of 29 hours. After her shift on Wednesday, February 10, she came home around midnight and fell

asleep on the couch with her boyfriend. The defendant awoke around 6 a.m. on February 11. Mostowski left for work around 7 a.m. and put Michael in his walker. The defendant's boyfriend also left for work, and Tianna watched cartoons. The defendant was awakened around 10 a.m. by Michael's crying. She tried to calm him but was unsuccessful. Around 11 a.m., she took him to his crib for a nap. He did not calm down, so she did something she had begun to do frequently over the last two months: she put her hand over his mouth to calm him. He relaxed, took a gasp of air, and his legs and arms moved. She then turned him over on his stomach, pulled his blanket up, and went into the living room.

Around 1:30 p.m. her boyfriend arrived. She borrowed his car and went shopping. According to the defendant, when she returned home around 2:30 p.m. her boyfriend said he had checked on Michael while she was out, and the child was still asleep. Her boyfriend then left.

Around 3 p.m. the defendant went in to check on Michael. He was cold and lifeless. She became hysterical. Her daughter came in to see what was wrong and then she too became hysterical. The defendant called Mostowski at work and told her to come home because there was an emergency. The defendant then called her employer and told her the baby was dead. The manager told her to call 9-1-1. She did, and the 9-1-1 operator instructed her on CPR, which she performed. The emergency crews and police arrived, as did Mostowski. The child was taken to the hospital and the police left. The defendant and her daughter remained in the home.

About two hours later, the police returned to the home to talk to the defendant. She described her day, but omitted any reference to her holding her hand over Michael's mouth. The defendant and her daughter were then taken to the police station. After the police questioned her daughter, they spoke to the defendant. They told her that there were some inconsistencies between her story and her daughter's. At that point the defendant broke down and told the story of her day again, this time including the fact that she had put her hand over Michael's mouth. She was then arrested.

Ultimately, the defendant was indicted for involuntary manslaughter with the enhancement that the victim was a family or household member, a Class 2 felony. The indictment, as presented to the jury, read:

> "[S]aid defendant, acting in a reckless manner, performed an act likely to cause death or great bodily harm to some individual, in that she covered the mouth and nose of Michael Mostowski with her hand, thereby causing the death of Michael Mostowski, a family or household member of the defendant."

At trial, the judge instructed the jury on the elements of the offense:

> "[T]o sustain the charge of involuntary manslaughter, the State must prove the following propositions: First proposition, that the defendant performed the acts which caused the death of Michael Mostowski, and, second proposition, that the defendant performed those acts recklessly, and, third proposition, that those acts were likely to cause death or great bodily harm."

The State proposed no instruction on the part of the indictment regarding the victim as a family or household member. The defense did not object to the proposed instruction.

The defendant was convicted on September 2, 1999. Defense counsel moved for a new trial and the motion was denied. On October 4, 1999, the trial judge found the defendant eligible for an extended term due to the tender age of the victim (730 ILCS 5—5—3.2(b)(4)(i) (West 1998)) and sentenced the defendant to eight years in prison. Defense counsel's motion to reconsider the sentence was denied on · October 12, 1999. This appeal followed.

## Analysis

The defendant asserts that she was improperly convicted of involuntary manslaughter of a family or household member because the jury was not required to find, beyond a reasonable doubt, that the victim was a family or household member. We agree with the defendant's contention that the State must prove every element of an offense beyond a reasonable doubt, but, for the reasons stated below, we find this matter is properly characterized as a sentencing issue.

Before discussing the merits of defendant's contention, we must first address the State's assertion that the defendant has waived any sentencing issues for failing to raise them in a posttrial motion to reconsider sentence. It is generally true that a defendant must raise sentencing issues first at the trial level to preserve them on appeal. *People v. Reed*, 177 Ill. 2d 389, 686 N.E.2d 584 (1997). However, under *People v. Williams*, 179 Ill. 2d 331, 688 N.E.2d 1153 (1997), and *People v. Wilson*, 181 Ill. 2d 409, 692 N.E.2d 1107 (1998), it is no longer clear that the doctrine of waiver applies when, as here, the defendant challenges the statutory authority of the trial court. Additionally, because of the constitutional ramifications to this case of the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and that decision's implications in this case, we find that plain error should apply pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).

## I

Involuntary manslaughter is a Class 3 felony with a punish-

ment range of two to five years. 720 ILCS 5/9—3(d) (West 1998); 730 ILCS 5/5—8—1(a)(6) (West 1998). However, if the victim is a member of the defendant's family or household, involuntary manslaughter is enhanced to a Class 2 felony with a punishment range of 3 to 14 years. 720 ILCS 5/9—3(f) (West 1998). A prison sentence for an unenhanced Class 2 felony is three to seven years. 730 ILCS 5/5—8—1(a)(5) (West 1998).

The sentence for involuntary manslaughter may also be extended if the judge determines that the victim was under the age of 12 when the offense occurred (730 ILCS 5/5—5—3.2(b)(4)(i), 5—8—2 (West 1998)). When extended, the sentencing range becomes 5 to 10 years (730 ILCS 5/5—8—2(a)(5) (West 1998)).

Here, the judge sentenced the defendant to eight years. The State argues first that the uncontested evidence that the victim was a family or household member is sufficient to support the sentence under the enhancement provision of the involuntary manslaughter statute. Alternatively, the State argues that even if the enhanced involuntary manslaughter provision does not apply, the sentence is still appropriate using the extended-term statute. Both of the arguments must fail based on *Apprendi*.

In *Apprendi*, the Supreme Court held that a New Jersey sentence enhancing procedure violated the sixth amendment as applied to the states by the fourteenth amendment. U.S. Const., amends. VI, XIV. In that case, Apprendi was convicted pursuant to his pleas of unlawful discharge of a firearm, a crime with a punishment range of 5 to 10 years of imprisonment. At sentencing, the State presented evidence under a separate New Jersey sentence enhancing statute that the crime was motivated by racial bias or hatred. If enhanced, the sentence range was increased to 10 to 20 years. The judge found, by a preponderance of the evidence, that the crime was racially motivated and sentenced Apprendi to 12 years in prison.

The Supreme Court held that the New Jersey sentence enhancement procedure violated the Constitution. "[T]he effect of New Jersey's sentencing 'enhancement' here is unquestionably to turn a second-degree offense into a first-degree offense, under the State's own criminal code." *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365. The Court disapproved of the attempt by the New Jersey legislature to circumvent the typical role of the fact finder by allowing a substantive issue of the criminal act to be called a "sentencing enhancement." "[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.

## II

The State contends that *Apprendi* is inapplicable to the instant case because the defendant was proven guilty of a Class 2 felony which, pursuant to the statute, carries a maximum punishment of 14 years, and she was sentenced to less than the maximum possible punishment. However, the defendant was not properly convicted of the Class 2 felony of enhanced involuntary manslaughter. Although the indictment charged the defendant with involuntary manslaughter of a family or household member, the jury was instructed to make a finding on only the basic elements of involuntary manslaughter. The jury did not make a finding beyond a reasonable doubt that the victim was a family or household member.

■ Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[1] *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. Any other procedure "is an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." *Apprendi*, 530 U.S. at 497, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366.

■ Here, the jury was not instructed to find all of the elements of enhanced involuntary manslaughter. We find that section 9—3(f) of the Criminal Code of 1961 (720 ILCS 5/9—3(f) (West 1998)) states a distinct offense that, under *Apprendi*, constitutionally requires proof beyond a reasonable doubt of the elements of involuntary manslaughter with the additional element that the victim was a family or household member. Therefore, the defendant was improperly sentenced under the enhancement provision of the involuntary manslaughter statute.

## III

The State argues that even if the defendant was not eligible for punishment under the enhanced involuntary manslaughter provision, the judge properly sentenced her pursuant to the extended-term provision of the Unified Code of Corrections. The judge found at sentencing that the victim was a child under the age of 12. Since an extended-term factor was found, the State argues, a sentence of up to 10 years could be imposed.

■ The extended-term sentence in this case is analogous to *Ap-*

---

[1] The case at bar does not involve a defendant with a prior criminal record. However, it should be noted that in *Apprendi* the Court noted that prior convictions may serve as the basis for the imposition of an extended or enhanced sentence without the prior convictions being proven to the trier of fact beyond a reasonable doubt.

*prendi*. The judge found defendant eligible for an extended-term sentence based on a factor that was not before the jury. In *Apprendi*, the New Jersey statutory procedure that was invalidated by the Supreme Court required the trial court judge to find the sentence enhancing factor by preponderance of the evidence. The Court held that "preponderance of the evidence" was not a sufficient level of proof. *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348. Illinois' extended-term statutory scheme offers even less constitutional safeguards than the New Jersey law. The Illinois statute imposes no burden of proof on the judge; the statute merely states that certain factors "may be considered" by the trial judge in imposing an extended-term sentence. 730 ILCS 5/5—5—3.2(b) (West 1998).

■ We hold that section 5—5—3.2(b)(4)(i) of the Unified Code of Corrections (730 ILCS 5/5—5—3.2(b)(4)(i) (West 1998)) is unconstitutional under *Apprendi* to the extent that it allows an increase in punishment for a felony based on the age of the victim where that specific finding is not charged to the jury.

■ Because the defendant was impermissibly sentenced to eight years' imprisonment, we vacate the sentence and remand for a new sentencing hearing. The sentence to be imposed cannot exceed five years, the statutory maximum term for the Class 3 felony of involuntary manslaughter. The judgment is otherwise affirmed.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

HOLDRIDGE and SLATER, JJ., concur.