THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARROL K. HOPE, Defendant-Appellant.

Second District   No. 2—00—0417

Opinion filed December 28, 2001.

858

HUTCHINSON, P.J., dissenting.

G. Joseph Weller and Jack Hildebrand, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Deidre A. Donnellan, of Plainfield, for the People.

JUSTICE BYRNE delivered the opinion of the court:

Following a jury trial, defendant, Darrol K. Hope, was convicted of one count each of aggravated battery (720 ILCS 5/12—4(b)(1) (West 2000)) and battery (720 ILCS 5/12—3(a) (West 2000)). The trial court sentenced him to 6 years' imprisonment for aggravated battery and 364 days in jail for battery. Defendant appeals his convictions, arguing that (1) he was prejudiced when the prosecutor mentioned during closing argument that defendant was attempting to trick the jury by introducing a lesser-included-offense instruction, (2) the court erroneously denied defendant's request to proceed *pro se,* and (3) the six-year sentence for aggravated battery violates *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We affirm defendant's convictions, but we vacate his sentence for aggravated battery and remand the cause for resentencing on that conviction.

## FACTS

Defendant was charged with the aggravated battery of his sister, Vivian McDonald, and her husband, David McDonald. Assistant public defender Jameson Kunz was appointed to represent defendant, and Kunz informed the court that Dr. Syed Ali had found defendant unfit to stand trial. The State then enlisted Dr. Lyle Rossiter to examine defendant. Defendant told Dr. Rossiter that he would not speak with him until Kunz was removed from the case. Another assistant public defender accompanied Dr. Rossiter to examine defendant, and the court subsequently scheduled a fitness hearing.

At the hearing, defendant again asked Kunz to withdraw because he allegedly failed to contact several witnesses. Kunz responded that

defendant would not disclose the names of the witnesses he wished to call. Dr. Rossiter testified that defendant was fit to stand trial because defendant understood the charges against him, the potential penalties if convicted, the nature of the court proceedings, and the roles of the judge, prosecutor, and defense counsel. Dr. Rossiter also stated that defendant could recall the events at issue and assist his attorney at trial. Dr. Rossiter did not believe that defendant was schizophrenic.

Dr. Ali testified that defendant probably suffered from paranoid schizophrenia. Defendant had told Dr. Ali that defendant's sister, Vivian, often played mind games with him and read his mind in an effort to turn him into a "faggot." A jury found defendant fit to stand trial, and the court permitted Kunz to withdraw from the case.

Assistant public defender John Elias was appointed, and he informed the court that defendant had complained that Elias had needlessly delayed the case and had incorrectly changed defendant's plea to "temporary insanity." Elias stated that there was still a legitimate doubt as to defendant's fitness and that defendant wanted a new attorney. Defendant announced that he wished to represent himself and that he wanted to hire his own attorney. The court ruled that no changes to defendant's representation could occur until his renewed unfitness claim was decided. The court subsequently accepted another expert's finding that defendant was fit.

Elias later stated that he wished to withdraw because defendant would not communicate with him. The court told defendant that his only alternative was self-representation. Defendant responded that he could not read or write very well and that he did not know the law. The court stated, "Well, if you are telling me you don't have any idea what you're doing, I am going to deny the [public defender's] motion to withdraw." Defendant was admonished that his failure to cooperate with counsel would hinder his defense.

Assistant public defenders John Elias and Tara Howard represented defendant at trial. Defendant's sister, Vivian, testified that she occasionally permitted defendant to sleep in her home because he was homeless. Defendant was allowed to enter the home only after 9 p.m., but he could not enter the bedroom, and he was to leave each morning before Vivian left for work.

On January 29, 1999, the night of the incident, Vivian was home with David and defendant. Vivian and David left to buy dinner, and when they returned, Vivian saw defendant walk out of the bedroom. Vivian and David watched a movie and ate in the bedroom. When David carried the dishes to the kitchen, Vivian heard him ask defendant why he had been in the bedroom. David and defendant argued, and Vivian suggested to defendant that he might have merely been

sleepwalking. Defendant grabbed Vivian's neck, beat her, and bit her over her left eye. As she broke free and ran toward the front door, she saw defendant enter the kitchen and she heard a drawer open. Vivian tried to call the police but the phone was broken. David and defendant fought in the bathroom, and she heard David say, "Why did you stick me with that knife?" Vivian called the police from a neighbor's home.

David testified that he saw defendant choking and biting Vivian. David grabbed defendant and, as they fought, David was forced into the bathroom. Defendant stabbed David twice with a knife and bit off part of his ear. Shortly thereafter, the police arrived and restrained defendant.

Defendant testified that Vivian and David had argued for three weeks before the incident. During one of the arguments, defendant saw Vivian retrieve a knife and David beat her head. On the night of the incident, defendant went to sleep on the couch, but David woke him in the bedroom. Defendant told Vivian that he did not know how he had arrived there, and the two began to argue. When the argument escalated, David struck defendant with a shiny object that defendant believed was a gun. Vivian and David struck defendant, and defendant grabbed a nearby knife and began swinging it. David and defendant wrestled in the bathroom, and David struck him with a mirror before the police arrived.

Carol Stream police officer Tom Eby testified that he saw David strike defendant in the head with a silver object. At the time he was handcuffed, defendant was very agitated and attempted to lunge at another officer.

During closing argument, Assistant State's Attorney Alexander argued that the jury should find defendant guilty of the aggravated battery of David. The trial court had previously granted defendant's request to instruct the jury on the lesser-included offense of battery, and Ms. Alexander told the jury that defendant was the party who requested the instruction. The following colloquy occurred:

"MS. ALEXANDER [Assistant State's Attorney]: You are going to get an instruction, you are going to get three verdict forms for this particular offense. One, that the defendant is guilty of aggravated battery. There is also a verdict form that says he's not guilty of aggravated battery. You are going to read another verdict form, that he's guilty of battery. Ladies and gentlemen, the defense has requested this, and we're asking you not—

MS. HOWARD [defense counsel]: Objection.

THE COURT: Sustained.

MS. ALEXANDER: We are asking you not to fall for the compromise. Don't call this horrific crime anything less than what it is.

It's aggravated battery. It's not merely a battery. Find him guilty of aggravated battery."

Defense counsel did not object to the prosecutor's statement that the jury should not "fall for the compromise," and the jury found defendant guilty of the aggravated battery of David. Defendant was also found guilty of the battery of Vivian.

At the sentencing hearing, the State argued that several aggravating factors found in section 5—5—3.2 of the Unified Code of Corrections (Code) (730 ILCS 5/5—5—3.2 (West 2000)) supported the imposition of a long, nonextended sentence under section 5—8—1 of the Code (730 ILCS 5/5—8—1 (West 2000)). Specifically, the prosecutor argued that (1) defendant's conduct caused or threatened serious harm, (2) defendant had a history of criminal activity, (3) a long sentence was necessary to deter others, and (4) defendant committed the felony of aggravated battery while serving probation for a prior felony. See 730 ILCS 5/5—5—3.2(a)(1), (a)(3), (a)(7), (a)(12) (West 2000). While arguing that defendant's criminal history warranted a long prison term, the prosecutor mentioned several of defendant's prior misdemeanor convictions, as well as his 1991 aggravated battery conviction. Defendant did not challenge the statements as untrue.

The trial court then sentenced defendant to a six-year extended term for the aggravated battery of David. The court noted that it had considered the aggravating and mitigating factors, the victim impact statements, defendant's psychiatric problems, and all of his prior convictions. The court did not expressly find that defendant's 1991 aggravated battery conviction rendered him eligible for an extended prison term. The court imposed a concurrent 364-day jail sentence for the battery of Vivian and recommended that defendant receive psychiatric treatment while incarcerated.

## ANALYSIS

On appeal, defendant does not challenge the sufficiency of the evidence. Instead, he initially argues that he was denied his right to self-representation. At several stages of the proceedings, defendant expressed his dissatisfaction with the performance of defense counsel. After defendant was twice found fit for trial, the court found that defendant voluntarily and intelligently waived his right to counsel. However, defendant subsequently asked the court to appoint someone to help him with his case. The following colloquy occurred:

"THE COURT: Do you want [the public defender's office] to represent you, or are you going to represent yourself?

DEFENDANT: That's the problem. I don't have any idea about the law. What I am saying, [assistant public defender Elias] has caused me so many problems over the last year.

THE COURT: All right. Well, if you are telling me you don't have any idea what you're doing, I am going to deny the motion to withdraw. [The] January 31st [trial date] will stand.

You have to cooperate with your attorney. The case is going to go to trial on that day. If you don't cooperate with them, then their ability to represent you is going to be hindered by that lack of information, okay?"

■ Defendant asserts that the trial court should have granted Elias's motion to withdraw and then appoint standby counsel. It is well settled that a defendant's waiver of counsel must be clear and unequivocal. *People v. Burton*, 184 Ill. 2d 1, 21 (1998). When determining whether a waiver is unambiguous, a court should consider the context of the proceedings and the circumstances of each case. *Burton*, 184 Ill. 2d at 22. Even if a defendant indicates that he wishes to proceed *pro se*, he may later acquiesce in representation by counsel. *Burton*, 184 Ill. 2d at 23. Moreover, a defendant can waive his right to self-representation by subsequent conduct indicating that he is vacillating or has abandoned his request completely. *People v. Meeks*, 249 Ill. App. 3d 152, 170 (1993). A trial court's decision on the issue should not be reversed absent an abuse of discretion. *People v. Fritz*, 225 Ill. App. 3d 624, 626-27 (1992).

■ Defendant asked the court to permit assistant public defender Elias to withdraw. However, defendant subsequently requested standby counsel because he did not understand the law. Defendant stated that he could not read or write very well or afford an attorney. Defendant concedes on appeal that he did not have a right to standby counsel. See *People v. Redd*, 173 Ill. 2d 1, 38 (1996) (a trial court has broad discretion to appoint counsel for advisory or other limited purposes and to determine the extent of standby counsel's involvement). We conclude that his repeated complaints about appointed counsel amounted to an ongoing request for a substitution of counsel rather than an assertion of his right to proceed *pro se*. In fact, the court twice asked defendant whether he wished to proceed without counsel, and each time defendant responded that he merely wanted Elias's representation to end. Defendant's indication that he wished to proceed *pro se* was ambiguous, and he acquiesced in Elias's representation at trial. Therefore, we conclude that the court did not abuse its discretion when it denied Elias's motion to withdraw. See *Fritz*, 225 Ill. App. 3d at 626-27.

Defendant next argues that he was denied a fair trial when the prosecutor mentioned during the closing argument that defendant was relying on the lesser-included-offense instruction to limit his criminal liability. Defendant contends that the prosecutor's statements implied

that defendant's introduction of the instruction was a fraudulent use of trial strategy.

■ A trial court's decision on the propriety of closing argument should not be reversed on appeal unless the court abused its discretion. *People v. Buss*, 187 Ill. 2d 144, 244 (1999). When the prosecutor's disregard for the bounds of proper argument is flagrant and purposeful, the only logical conclusion is that the comments were made for the sole purpose of prejudicing the defendant. *People v. Moya*, 175 Ill. App. 3d 22, 24-25 (1988). Defendant contends that the prosecutor knew or should have known that it was improper to inform the jury that defense counsel had requested the lesser-included-offense instruction, and, therefore, she made the objectionable statement for the sole purpose of prejudicing defendant. We disagree. The record reveals that the prosecutor's statement was inadvertent and isolated.

■ Every defendant has the right to a trial free from improper prejudicial comments by the prosecutor. However, the prosecutor is allowed a great deal of latitude during closing arguments. *People v. Pasch*, 152 Ill. 2d 133, 184 (1992). Although the prosecutor's remarks may sometimes exceed the bounds of proper comment, the verdict must not be disturbed on appeal unless the remarks substantially prejudiced the accused so that the verdict would have been different absent the comments. *Pasch*, 152 Ill. 2d at 185. Here, there was overwhelming evidence of defendant's guilt. David testified that defendant stabbed him twice with a knife, and David was treated for stab wounds. Vivian testified that she heard defendant retrieve something from a kitchen drawer before David shouted, "[W]hy did you [defendant] stick me with that knife?" The trial court sustained defense counsel's objection to the admittedly improper remark, and we conclude that the comment did not affect the jury's verdict.

Defendant also claims that the prosecutor's statement "insinuated that defendant was conceding that he had committed a battery." We disagree. The prosecutor expressly argued that defendant did *not* commit battery. She asserted that defendant's conduct warranted an aggravated battery conviction instead. Therefore, we conclude that the trial court did not abuse its discretion when it permitted the prosecutor to argue that the jury should not "fall for the compromise" of finding defendant guilty of mere battery.

■ Finally, defendant contends that his six-year sentence for aggravated battery violates *Apprendi*. We agree. At the sentencing hearing, the trial court noted that it had considered the aggravating and mitigating factors of sections 5—5—3.2 and 5—5—3.1 of the Code. The prosecutor specifically argued that defendant's 1991 aggravated battery conviction warranted a long, *nonextended* prison term under

section 5—5—3.2(3), and the court did not expressly find that the conviction authorized an extended term.

In *Apprendi*, the Supreme Court invalidated a New Jersey hate crime statute that increased the nonextended 5- to 10-year sentencing range for possession of a firearm for an unlawful purpose to an extended 10- to 20-year term if the trial judge found by a preponderance of the evidence that the defendant, when committing the offense for which he was being sentenced, had acted with a racially biased purpose. *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. The Court held that, *"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."* (Emphasis added.) *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

This case is similar to *People v. Chanthaloth*, 318 Ill. App. 3d 806 (2001). In that case, a jury found the defendant guilty of home invasion and residential burglary, and the trial court imposed a 40-year extended term of imprisonment and a consecutive 4-year nonextended term of imprisonment for the respective offenses. The trial court found that the following aggravating factors rendered the defendant eligible for an extended sentence for home invasion: (1) the crime was exceptionally brutal and heinous (see 730 ILCS 5/5—5—3.2(b)(2) (West 1998)), (2) the victim was over the age of 60 (see 730 ILCS 5/5—5—3.2(b)(4)(ii) (West 1998)), and (3) the victim was physically handicapped at the time of the offense (see 730 ILCS 5/5—5—3.2(b)(4)(iii) (West 1998)). *Chanthaloth*, 318 Ill. App. 3d at 814. On appeal, we vacated the defendant's residential burglary conviction and sentence (*Chanthaloth*, 318 Ill. App. 3d at 814) and also held that the extended sentence for home invasion violated *Apprendi* (*Chanthaloth*, 318 Ill. App. 3d at 818). We noted that the State had presented evidence that the victim was over the age of 60 and that factor was not challenged by the defense. Therefore, we concluded, the age of the victim was an element of the aggravating offense that was submitted to a jury and proved beyond a reasonable doubt in compliance with *Apprendi*. We nevertheless vacated the defendant's extended sentence because it appeared that the trial court had considered not only the victim's age but also the victim's disability and the nature of the crime. *Chanthaloth*, 318 Ill. App. 3d at 818. Under *Chanthaloth*, even if a finding of one aggravating factor complies with *Apprendi*, an extended sentence should nevertheless be vacated and the defendant resentenced when (1) the record reflects that the trial court found other aggravating factors that should have been proved beyond a reasonable doubt and submitted to a jury and (2) the court erroneously considered those fac-

tors when imposing the sentence. See *Chanthaloth*, 318 Ill. App. 3d at 818.

Here, defendant was convicted of aggravated battery, which is a Class 3 felony ordinarily punishable by a nonextended term of two to five years' imprisonment. See 720 ILCS 5/12—4(e) (West 2000); 730 ILCS 5/5—8—1(a)(6) (West 2000). Defendant was eligible for an extended term of 5 to 10 years' imprisonment because he had been convicted of aggravated battery within 10 years of his prior aggravated battery conviction. See 730 ILCS 5/5—5—3.2(b)(1), 5—8—2(a)(5) (West 2000)). The trial court imposed a six-year extended term of imprisonment, and *Apprendi* did not require the jury to find beyond a reasonable doubt that defendant had a prior conviction of aggravated battery. However, the record does not reveal whether the trial court correctly relied upon *only* the 1991 aggravated battery conviction when extending defendant's sentence beyond the maximum. If the court, in fact, found that other aggravating factors under section 5—5—3.2 warranted the imposition of an extended sentence, the sentence would violate *Apprendi* because those factors were not submitted to the jury and proved beyond a reasonable doubt. Because we cannot determine whether the court considered defendant's 1991 conviction only when imposing the extended term, we vacate defendant's sentence for aggravated battery and remand the cause for resentencing. See *Chanthaloth*, 318 Ill. App. 3d at 818. If the trial court elects to impose an extended sentence on remand, *Chanthaloth* requires the court to expressly note that it is relying only on the prior Class 3 felony conviction under section 5—5—3.2(b)(1) of the Code. See *Chanthaloth*, 318 Ill. App. 3d at 818.

For these reasons, defendant's convictions of aggravated battery and battery are affirmed, but his sentence for aggravated battery is vacated, and the cause is remanded for resentencing on that conviction.

Affirmed in part and vacated in part; cause remanded with directions.

GROMETER, J., concurs.

PRESIDING JUSTICE HUTCHINSON, dissenting:
My dissent in this case reaches only the *Apprendi* sentencing issue. As author of *People v. Chanthaloth*, 318 Ill. App. 3d 806 (2001), I do not understand that case to mandate the remand of this matter for resentencing.

The *Chanthaloth* case was an early disposition in the *Apprendi*

series of cases. While it remains a valid analysis of the law of sentencing after the *Apprendi* decision, later decisions by the supreme court, this appellate district, and the other appellate court districts across the state have sharpened and clarified the Illinois sentencing law as it relates to *Apprendi* challenges. See *People v. Ford*, 198 Ill. 2d 68 (2001); *People v. Rivera*, No. 2—98—1662 (December 5, 2001); *People v. Reed*, 324 Ill. App. 3d 671 (2001); *People v. Vida*, 323 Ill. App. 3d 554 (2001); *People v. Nita*, 319 Ill. App. 3d 949 (2001). Very recently, the First District found that the trial court properly considered the age of the victim when imposing an extended-term sentence even though the victim's age had not been submitted as a factor to the jury. The reviewing court determined that evidence of the victim's age had been presented during the trial, was undisputed by the parties, and did not require the trial court to weigh evidence or examine the defendant's mental state. The reviewing court held that it was harmless error. *People v. Blackwell*, 325 Ill. App. 3d 354, 359-60 (2001).

Finally, the principle that a trial court need find only a single statutory factor in aggravation to impose an extended sentence has also recently been reinforced. *People v. Peacock*, 324 Ill. App. 3d 749, 756-57 (2001).

In this case, the trial court noted that it had considered defendant's prior criminal history, which included a 1991 aggravated battery conviction, as well as other aggravating and mitigating factors when sentencing defendant. While I will concede that the trial court did not expressly highlight this conviction or indicate specific reliance on this conviction, the fact remains that such a prior conviction exists. More significantly, this prior conviction is of aggravated battery, and the charge for which defendant received an extended-term sentence is an aggravated battery.

Since the trial court need find only a single statutory factor in aggravation to impose an extended term, and the use of the defendant's prior criminal history is not prohibited by *Apprendi* (530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63), I would allow the sentence to stand and affirm this case in its entirety.