THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANNETTE M. PALMER, Defendant-Appellant.

Second District   No. 2—00—0641

Opinion filed March 12, 2002.

HUTCHINSON, P.J., dissenting.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BYRNE delivered the opinion of the court:

As the result of a partially negotiated guilty plea, defendant, Annette M. Palmer, pleaded guilty to the offense of armed violence premised on aggravated battery. The January 28, 2000, information alleged in pertinent part that defendant, "while armed with a dangerous weapon, a bludgeon, *** intentionally and without legal justification cut Pastor Escamilla about the body thereby causing great bodily harm [to him]." See 720 ILCS 5/12—4(a), 33A—2 (West 1998). This offense is a Class 2 felony (720 ILCS 5/33A—1(c), 33A—3(b) (West 1998)) having a normal sentencing range of three to seven years' imprisonment (730 ILCS 5/5—8—1(a)(5) (West 1998)). Under certain provisions of the Unified Code of Corrections (Code), an extended sentence of 7 to 14 years' imprisonment may be imposed (730 ILCS 5/5—8—2(a)(4) (West 1998)) if the court finds certain aggravating factors ("facts") were applicable, such as where the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty (wanton cruelty) (730 ILCS 5/5—5—3.2(b)(2) (West 1998)), or the victim was a person 60 years of age or older at the time of the offense (age) (730 ILCS 5/5—5—3.2(b)(4)(ii) (West 1998)). There was no agreement as to the sentence. It appears that the trial court imposed an extended sentence of 10 years' imprisonment based on its consideration at the sentencing hearing of two factors or "facts"—wanton cruelty and age.

On June 2, 2000, following the denial of defendant's motion to reconsider the sentence, defendant timely appealed. Defendant argues that her extended sentence must be reduced to a nonextended sentence because, in violation of her right to due process, the enhancing or aggravating factors (wanton cruelty and age) were not charged, submitted to a jury, and proved beyond a reasonable doubt. In support of her position she relies on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) (*Apprendi*). For the reasons that we shall explain, we agree with defendant. We vacate the sentence and remand the cause for resentencing consistent with the principles enunciated in *Apprendi* and with the views expressed herein.

The record further reveals that on January 28, 2000, defendant pleaded guilty to the armed violence charge and, as part of the plea agreement, the State nol-prossed the charges of attempted first-degree murder, aggravated battery, and aggravated battery of a senior citizen. It appears that part of the consideration for the plea was that the

Class 2 felony was a probationable offense. The court read the armed violence charge to defendant. The trial court informed defendant, among other things, that the offense was "technically probationable" and that the sentencing range for the offense was three to seven years' imprisonment. The court also stated that defendant could receive a term of 7 to 14 years' imprisonment "if you have a previous conviction within the last 10 years *** or if *** there is aggravation that qualifies you for that category." The court later added that it did not know whether defendant qualified for an extended term due to a previous felony conviction or "if the injuries are severe enough for this court to consider an extended term sentence. It's possible. But I underline the word possible." The court explained generally the various rights that defendant would give up by pleading guilty.

The State presented a factual basis for the plea, which is briefly summarized here. The victim, Escamilla, was drinking with defendant. Escamilla fell asleep. When he woke up, defendant was stabbing him. No weapon was found, but defendant claimed she used a garden tool (bludgeon) to attack Escamilla. Defendant went to the hospital with blood on her body. In her statement, she claimed that she had been sexually assaulted. The victim later arrived at the hospital and had 57 stab wounds. (The record shows that there is a slight discrepancy in the exact number of stab wounds.) The State characterized the wounds as "great bodily harm." The wounds required stitches, sutures, and surgery. A police investigation determined that defendant did the stabbing. The State asserted that the sexual assault claim was unfounded. Defense counsel added that it was defendant who called the police initially, and the police transported her to the hospital where she remained for about five hours. When defendant saw Escamilla at the hospital, she called the police a second time. She later went voluntarily to the police department. She stayed in the lockup for about three days before she was charged. The trial court accepted the factual basis and the waiver of defendant's right to a trial and set the matter for sentencing.

The sentencing hearing began on February 29, 2000. The State presented evidence in aggravation. The complaining witness read the victim impact statement expressing his fears since the commission of the offense. An employee testified regarding a fight between defendant and another inmate in December 1999. With the aid of photographs that were admitted into evidence, Sean Hilbert, an investigator for the North Chicago police department, testified regarding the wounds the victim sustained and the conditions found at the scene of the crime. Hilbert stated at one point that the victim had 52 wounds. Hilbert also testified that defendant claimed the victim had sexually assaulted

her. On cross-examination, the investigator admitted that the incident happened at midnight and that Escamilla did not arrive at the hospital for medical treatment until the following morning, almost 12 hours later.

Brian Gorcowske, an Elgin police detective, testified regarding his investigation of a June 19, 1999, incident in which defendant's boyfriend, Kevin Childress, suffered a fatal stab wound during the course of a domestic dispute. Gorcowske determined that defendant inflicted the stab wound. Defendant had claimed alternatively that she acted in self-defense or the fatal wound was an accident. The State sought to charge defendant with second-degree murder, but the grand jury returned a "no true bill." Gorcowske admitted that on a prior occasion Childress had been arrested and charged for punching defendant in the eye. That charge was subsequently dropped because defendant did not choose to have him prosecuted.

In mitigation, defendant's father testified regarding the positive aspects of his relationship with defendant. Defendant had been in abusive relationships. He believed she needed counseling, and he believed he could be of assistance to her.

The State argued that there were aggravating factors present. Among other things, the State argued that defendant should be given an extended sentence because of the age of the victim and because the offense was accompanied by brutal or heinous behavior indicative of wanton cruelty. The State emphasized that there were 54 wounds.

Defense counsel argued that there were mitigating circumstances and that defendant had been in situations where she had been abused or battered. He claimed the wounds were not indicative of wanton cruelty and characterized them as slashes rather than stabs. He asked the court to consider defendant's need for social services and substance abuse counseling and her potential for rehabilitation; he sought a period of probation and a six-month jail term.

The trial court considered various aggravating and mitigating factors. The court noted in particular that defendant should have contemplated that 54 wounds would cause harm. The court could not determine that defendant acted under strong provocation or had grounds tending to excuse or justify her conduct. The court considered defendant's criminal history and her cocaine use and determined that she was likely to commit another crime. The court found that the nature of the (great) bodily harm made the truth-in-sentencing provisions applicable (see 730 ILCS 5/3—6—3(a)(2) (iii) (West 1998) (for certain enumerated offenses, defendant must serve 85% of the sentence where there is a finding of great bodily harm to victim)). The court concluded that an extended term of 10 years' imprisonment was

warranted because the victim was 67 years old and there were 54 to 57 stab wounds.

At the hearing on defendant's motion to reconsider the sentence, defense counsel argued among other things that the offense was not accompanied by brutal or heinous behavior and that, had the case gone to trial, the factual circumstances could have shown that defendant's unreasonable belief—that the amount of force used was justified in self-defense—was inconsistent with a finding of behavior indicative of wanton cruelty. In support of his argument, counsel cited *People v. Evans*, 87 Ill. 2d 77, 88 (1981).

The trial court denied the motion to reconsider but issued a corrected mittimus on June 2, 2000, to show that the armed violence offense was a Class 2 felony. We note that the original sentencing order of March 21, 2000, states that defendant's term of imprisonment for armed violence is 10 years. The order further notes, "Court finds offense was brutal and heinous" and "Court also finds great bodily harm."

Defendant argues essentially that the sentencing procedure that was used to enhance her sentence is unconstitutional. In support of her position, she relies on the general rule of *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63, which states, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Defendant asserts that the armed violence charge to which she pleaded guilty did not encompass the additional "facts" or "elements" of wanton cruelty and age, which the trial judge found and then used to enhance her sentence beyond the normal, statutory maximum penalty.

In *Apprendi*, the defendant, Charles C. Apprendi, Jr., pleaded guilty to certain firearms violations. He fired several bullets into the home of an African-American family. The prosecutor for the State of New Jersey reserved the right to request that the trial court impose an enhanced sentence based on a hate-crime statute. The defendant reserved the right to challenge the sentence enhancement on constitutional grounds. None of the charges referred to the hate-crime statute and none alleged that Apprendi acted with a racially biased purpose.

Apprendi was sentenced to an extended term after the prosecutor moved to enhance the sentence. Under the New Jersey statute, the judge was called upon to extend the sentence if the judge found, by a preponderance of the evidence, that the defendant, in committing the crime, acted with a purpose to intimidate the victim based on the race, color, gender, handicap, religion, sexual orientation, or ethnicity of the

victim. Pursuant to the statute, the maximum 10-year prison sentence could effectively be doubled if the requisite finding was made. The trial court, sitting without a jury, found by a preponderance of the evidence that the shooting was racially motivated and sentenced the defendant to a 12-year term of imprisonment for the firearms charge.

The United States Supreme Court characterized the defendant's mental state (purpose to intimidate) as an element of the substantive offense rather than merely a sentencing factor. See *Apprendi*, 530 U.S. at 494-95, 147 L. Ed. 2d at 457-58, 120 S. Ct. at 2365. The Court explained that due process of law requires that the accused be afforded a jury determination that he is guilty beyond a reasonable doubt of every element of the crime with which he is charged, that is, due process protects the accused against a conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Apprendi*, 530 U.S. at 476-77, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355-56.

The Court pointed out that it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed and that it is clear that such facts must be established beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363. The Court concluded that the New Jersey procedure was an unacceptable departure from the jury tradition, reversed the ruling of the Supreme Court of New Jersey, and remanded the cause for further proceedings. The Court observed that its decision was foreshadowed by *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999) (under fifth amendment due process clause, any fact other than prior conviction that increases maximum penalty for crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt).

For a fuller understanding of the Court's ruling in *Apprendi*, it is instructive to examine briefly the New Jersey Appellate Court decision and the dissent therein in particular. *State v. Apprendi*, 304 N.J. Super. 147, 698 A.2d 1265 (1997), *aff'd*, 159 N.J. 7, 731 A.2d 485 (1999), *rev'd*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In the appellate decision of *State v. Apprendi*, the reviewing court held that the hate-crime statute's authorization for extended sentencing, based upon the trial judge's finding by a preponderance of the evidence that the defendant had a biased motive, did not violate the due process requirement that the State must prove the elements of the crime beyond a reasonable doubt. The majority treated the defendant's bias or motive as a sentencing factor rather than as an element of the offense.

In the dissent (*State v. Apprendi*, 304 N.J. Super. at 161-67, 698

A.2d at 1272-75 (Wecker, J., dissenting)), Judge Wecker explained that the defendant's rights to a trial by jury and to be proved guilty beyond a reasonable doubt were violated because the defendant's motive to intimidate was an element of the crime that increased the sentence for the crime. Judge Wecker noted that the defendant did not raise the right to an indictment by a grand jury (the indictment did not allege the prohibited purpose element); his plea did not provide a factual basis for the prohibited purpose; and he denied such a purpose at the sentencing hearing. The dissenting judge explained that, while the defendant waived his right to a jury trial on the underlying charge, he did not waive that right, or the right to proof beyond a reasonable doubt, with respect to the prohibited purpose element. *State v. Apprendi*, 304 N.J. Super. at 163, 698 A.2d at 1273 (Wecker, J., dissenting).

Judge Wecker concluded that, where the State intends to seek a mandatory extended sentence because the underlying crime is accompanied by the forbidden purpose set forth in the hate-crime statute, then, unless the defendant expressly waives a jury, only a jury can find the defendant guilty and then only upon proof beyond a reasonable doubt. Judge Wecker further concluded that the defendant's extended sentence should be vacated and the cause remanded for resentencing within the normal sentencing range for the underlying offense. *State v. Apprendi*, 304 N.J. Super. at 167, 698 A.2d at 1275 (Wecker, J., dissenting). The United States Supreme Court's decision in *Apprendi*, which is based on these due process concerns, is consistent with Judge Wecker's dissent.

Recently, this court applied the *Apprendi* rule in *People v. Chanthaloth*, 318 Ill. App. 3d 806 (2001). There, a jury found the defendant guilty of home invasion and residential burglary. The trial court imposed a 40-year extended term and a consecutive 4-year nonextended term for the respective offenses. The trial court, sitting without a jury, found three aggravating factors that rendered the defendant eligible for the extended sentence for the home invasion offense: the crime was exceptionally brutal and heinous; the victim was over the age of 60; and the victim was physically handicapped at the time of the offense. On appeal, this court held that the extended sentence for home invasion violated the *Apprendi* rule. This court determined that the aggravating factors were in effect elements of the offense. See *People v. Hope*, 326 Ill. App. 3d 857 (2001) (explaining *Chanthaloth*).

In *Chanthaloth*, although evidence of the age of the victim had been submitted to a jury and proved as an element of the offense beyond a reasonable doubt in accordance with *Apprendi*, this court nevertheless vacated the defendant's extended sentence because it ap-

peared that the trial court had considered not only the victim's age, but also the victim's disability and the brutal nature of the crime. The cause was remanded for resentencing consistent with the rule of *Apprendi*. But *cf. People v. Rhoades*, 323 Ill. App. 3d 644 (2001) (exceptionally brutal and heinous nature of first-degree *murder* of minor was held to be proved beyond a reasonable doubt by defendant's guilty plea where the plea and sentence were fully negotiated, defendant was specifically and clearly admonished regarding the possible sentence of life imprisonment if the court found his conduct brutal and heinous, and the State had sought the death penalty).

In *People v. Thurow*, 318 Ill. App. 3d 128 (2001), *appeal allowed*, 194 Ill. 2d 580 (2001), the reviewing court determined that a sentence for enhanced involuntary manslaughter was unconstitutional under *Apprendi* where the jury was not instructed to make a finding beyond a reasonable doubt with respect to an element of the offense—that the victim was a family or household member. In sentencing the defendant to an extended term of eight years' imprisonment, the trial judge found that the victim was a child under the age of 12, a factor that was not presented to the jury.

The *Thurow* court observed that the Illinois statute in question imposed no burden of proof on the judge but merely stated that certain factors may be considered by the judge in imposing the extended term. The reviewing court held that section 5—5—3.2(b)(4)(i) of the Unified Code of Corrections (730 ILCS 5/5—5—3.2(b)(4)(i) (West 1998)) is unconstitutional under *Apprendi* to the extent that it allows the trial court to impose an extended sentence "based on the age of the victim where that specific finding is not charged to the jury." *Thurow*, 318 Ill. App. 3d at 135.

In *People v. Johnson*, 333 Ill. App. 3d 935 (2001), following a bench trial, the defendant was found guilty of attempted murder, aggravated battery, and unlawful possession of a weapon by a felon. At the sentencing stage, the trial judge found that the attempted murder was accompanied by exceptionally brutal behavior indicative of wanton cruelty. Based on this additional finding of fact, the trial judge imposed an extended sentence of 50 years' imprisonment where the normal maximum sentence allowed would otherwise have been a 30-year prison sentence. The reviewing court held that this finding involved an added element of the offense; that the judge's finding violated the *Apprendi* rule; and that this element should have been charged and proved beyond a reasonable doubt before a jury. The reviewing court reduced the sentence to the 30-year normal maximum term.

Our careful consideration of *Apprendi*, the dissent in *State v. Apprendi*, *Chanthaloth*, *Thurow*, and *Johnson* compel us to conclude that

the sentencing procedure in the present case violated the *Apprendi* rule. During the plea proceedings, defendant did not plead guilty to a charge that alleged the offense was accompanied by exceptionally brutal or heinous behavior, or that the victim was a person 60 years of age or older. These sentence-enhancing "facts" were not clearly and specifically made part of the factual basis necessary for the trial court to accept a plea that was knowingly and voluntarily entered with respect to the additional "facts." The admonishment to defendant was merely general with respect to the *possibility* of an extended sentence, and there was no mention of "brutal and heinous" conduct or the age of the victim as part of the plea. As in *Apprendi*, when defendant pleaded guilty, she did not know that she was giving up her right to have the State prove beyond a reasonable doubt to a jury that the crime was accompanied by brutal and heinous conduct indicative of wanton cruelty or that the victim was 60 years of age or older. A defendant should not be induced to plead guilty to one offense and then be sentenced for another offense.

Since these additional sentence-enhancing "facts" in effect constituted elements of the offense that warranted punishment beyond the normal maximum sentence, the judge's findings during the sentencing stage violated *Apprendi*. Absent a specific waiver by defendant of a trial by jury and proof beyond a reasonable doubt as to these specific elements and a clear and complete admonishment to defendant regarding the elements and the applicable enhanced penalties, these elements should have been charged and proved to a jury beyond a reasonable doubt. We believe that *Apprendi* requires no less to avoid violating a defendant's constitutional right of due process of law when entering a guilty plea.

The State argues that our decision in *People v. Chandler*, 321 Ill. App. 3d 292 (2001), calls for a different result. We disagree. In *Chandler*, the defendant pleaded guilty to a series of offenses and was sentenced to consecutive terms of six years' imprisonment for arson and three years' imprisonment for aggravated battery. The defendant pleaded guilty to more than one crime, and the court did not find him guilty of any elements not alleged in the indictment. The court specifically admonished defendant that consecutive sentences based on his future dangerousness were a possibility.

A court has the discretion to impose a consecutive sentence based on the nature and circumstances of the offense and the history and character of the defendant where the court is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant. 730 ILCS 5/5—8—4(b) (West 1998). In *Chandler*, the court based its finding of the defendant's future dangerousness

not on the presence of an additional factual element but on the number and nature of the defendant's crimes. In other words, the trial court based its finding of future dangerousness on defendant's criminal record. A defendant's prior crimes constitute recidivism, which *Apprendi* recognized as an exception to the requirement that the offenses be proved beyond a reasonable doubt before a jury. See *Chandler*, 321 Ill. App. 3d at 296; *People v. Watson*, 322 Ill. App. 3d 164 (2001); *People v. Lathon*, 317 Ill. App. 3d 573, 583-88 (2000). Finally, we observe that our supreme court has held that the imposition of consecutive sentences does not violate the rule of *Apprendi*. *People v. Wagener*, 196 Ill. 2d 269, 286-87 (2001). As can be seen from our discussion, *Chandler* is distinguishable on its facts, and it should be limited to those facts.

We recognize that in *Chandler* the court broadly stated, "Having waived a jury trial on all issues, defendant cannot now claim that he was deprived of the right to have a jury determine the issue of his future dangerousness. Similarly, he cannot claim that he was unfairly deprived of the right to have the State prove that point beyond a reasonable doubt." *Chandler*, 321 Ill. App. 3d at 297. However, we do not believe that an expansive reading of *Chandler* is warranted here, as the State urges, so that the defendant in this case can be said to have waived all the rights guaranteed under *Apprendi*. To the extent that *Chandler* even remotely suggests that a guilty plea waives deficiencies in the charge, the admonishments, and the factual basis necessary to a knowing and voluntary plea as to all the elements of an offense, including sentence-enhancing elements, we decline to follow *Chandler*. To do otherwise would be to disregard *Apprendi* itself.

We hereby vacate defendant's extended-term sentence. Defendant has not challenged her conviction, and it is therefore affirmed. On remand, defendant must be resentenced in accordance with the rule of *Apprendi* and the views we have expressed herein. See *Chanthaloth*, 318 Ill. App. 3d at 818.

The judgment of the circuit court of Lake County is affirmed in part and vacated in part, and the cause is remanded with directions.

Affirmed in part and vacated in part; cause remanded with directions.

CALLUM, J., concurs.

PRESIDING JUSTICE HUTCHINSON, dissenting:

I must again dissent from the *Apprendi* analysis and conclusion reached by the majority. I would affirm the order sentencing the defendant to an extended term of 10 years' imprisonment for the offense

of armed violence, a Class 2 felony. I would do so for two reasons: (1) defendant entered a guilty plea to the charge after proper mandatory admonitions and notice of the possibility of an extended-term sentence, and (2) the age of a victim is an easily proved fact that does not require a trial court to weigh or examine a defendant's mental state, and here the victim's age was not disputed.

Most recently, in *People v. Black*, 327 Ill. App. 3d 662 (2002), I dissented after a defendant entered a guilty plea, received an extended sentence, and then challenged his sentence on the basis of *Apprendi*. In that case, the majority accepted the *Apprendi* argument and remanded the cause for a new sentencing hearing because the trial court had used the age of the victims as the basis for the extended-term sentence. The reviewing court found that the victims' ages were not identified at the time of the plea but were specifically articulated by the trial court during the sentencing phase of the case. While conceding that the defendant in *Black* had been advised that an extended-term sentence was possible and that the number of years for such extended-term sentence had been identified, the majority held that, because the defendant was not forewarned, prior to sentencing, regarding the factors that could result in such a sentence, the principles of *Apprendi* had been violated.

My dissent in *Black* focused on the defendant's voluntary guilty plea, the fact that he had notice of the victims' ages based upon statements he made during the commission of the offense, and his waiver of all nonjurisdictional errors or irregularities as a result of the voluntary guilty plea. The situation, in my opinion, is no different in this case.

Here, the defendant entered a voluntary plea of guilty to the charge of armed violence premised on aggravated battery. Another charge arising out of the same incident and involving the same victim, aggravated battery to a senior citizen, was nol-prossed at that time, and there was evidence before the trial court that the defendant and the victim were involved in a personal relationship. The trial court specifically noted the number of stab wounds and the age of the victim when the extended-term sentence was imposed. Therefore, the defendant was on notice of the victim's age by virtue of her personal relationship with him and the dismissed charge, and she pleaded guilty, waiving all nonjurisdictional errors and irregularities.

In coming to my conclusion in this case, and as I came to my conclusion in the *Black* case, I relied on *People v. Chandler*, 321 Ill. App. 3d 292 (2001). In particular, this court said in *Chandler*:

> "A defendant who pleads guilty does not have the same appeal rights as one convicted following a trial. [Citation.] Generally, after

pleading guilty, a defendant may not raise claims of the deprivation of constitutional rights that occurred before the entry of the plea. [Citation.] Before defendant entered his plea, the court informed him of the sentencing ranges for the offenses and specifically admonished him of the possibility of consecutive sentences. Having waived a jury trial on all issues, defendant cannot now claim that he was deprived of the right to have a jury determine the issue of his future dangerousness. Similarly, he cannot claim that he was unfairly deprived of the right to have the State prove that point beyond a reasonable doubt." *People v. Chandler*, 321 Ill. App. 3d at 297.

I also take issue with the majority on another *Apprendi*-related matter as it relates to its reliance on *People v. Chanthaloth*. As I noted in another recent dissent (*People v. Hope*, 326 Ill. App. 3d 857 (2001)), I was the author of *Chanthaloth*, and I disagreed with the majority's use of that case to mandate a remand for resentencing when the victim's age was used to extend a sentence. In the *Hope* dissent, I noted that several other cases were decided after *Chanthaloth* that sharpened and clarified the Illinois sentencing law as it relates to *Apprendi* challenges, and, in particular, I cited a First District case, *People v. Blackwell*, 325 Ill. App. 3d 354 (2001). *Hope*, 326 Ill. App. 3d at 865-66.

Reasoning that a trial court need find only one single statutory factor in aggravation to impose an extended sentence (*Blackwell*, 325 Ill. App. 3d at 359), the majority there determined that, although an *Apprendi* violation may have occurred where the age of the victim was not submitted to a jury, the victim's age was known, it was undisputed by the parties, it was easily proved, and, therefore, it was harmless error. See also *People v. Rohlfs*, 322 Ill. App. 3d 965 (2001) (failure to ask the jury to determine the victim's age may have been harmless error where the victim testified she was 93 years old, there was no dispute regarding her age, and no reasonable jury could have found her to be under the age of 60).

Returning to this case, the defendant was on notice of the victim's age, the victim's age was not disputed by the parties, and the victim's age was a fact easily proved. Furthermore, the determination of the victim's age did not require that the trial court weigh any evidence or examine the defendant's mental state. Therefore, the trial court's use of the victim's age to extend the sentence of the defendant was, at worst, harmless error.

Accordingly, I would affirm the trial court's order imposing an extended-term sentence upon defendant.