Nos. 2--99--1308 & 2--99--1321 cons.

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Kane County.

)

Plaintiff-Appellee, ) Nos. 98--CF--2812 

                                )       98--CF--2818               v. )

)

BRIAN R. CHANDLER, ) Honorable

) Philip L. DiMarzio, 

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court: 

Defendant, Brian Chandler, pleaded guilty to arson (720 ILCS 5/20--1(a) (West 1998)) and aggravated battery (720 ILCS 5/12--4(a) (West 1998)).  The court sentenced him to consecutive six- and three-year terms of imprisonment.  Defendant appeals, contending that the court abused its discretion by (1) imposing a six-year sentence for arson and (2) making the sentences consecutive.  In a supplemental brief, defendant argues that the consecutive sentences were improper under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

Defendant pleaded guilty to a series of offenses committed against his estranged wife, Ann Marie Chandler.  Ann Marie testified at the sentencing hearing that on October 31, 1998, after an altercation with defendant, she moved out of the parties' home on Randall Road.  She obtained an order of protection against defendant.  Later, she and the parties' children moved into a new home on West Plum Street.

On November 20, she took the children to the Randall Road home to visit defendant.  Defendant got in her car and asked if they could work things out.  When she said no, defendant grabbed her hair and punched her in the face.  He then kept her in the house for several hours arguing with her.  The following day, defendant showed up at Ann Marie's Plum Street house.  He saw a truck in the driveway and accused her of being with another man.  After she denied it, defendant said, "I'm coming back in 20 minutes to destroy you."

On November 22, Ann Marie called defendant to arrange to pick up the girls from visitation.  Defendant said he wanted to move in with her because he would soon be evicted from the Randall Road house.  Ann Marie said that he could not move in.  Defendant replied that if she did not let him move in with her, he would "torture [her] for two days while [she] begged him to kill [her]," and would eventually kill her after two days.

The following morning, when Ann Marie went to take her children to school, she discovered that a tire on her car was flat.  She had the tire replaced and left.  When she returned, she discovered that a different tire had been cut.  She reported the incidents to the police and went to work.  At 9 p.m., an officer called to tell her that the Plum Street home was on fire.

As part of the factual basis for defendant's pleas, the prosecutor stated that defendant returned to the Plum Street house around 7:15 p.m. on November 23.  He entered the house by breaking a window, poured gasoline in the living room and, after checking to ensure that no one was home, set the gasoline on fire.  The Aurora police arrested defendant the next day, and he confessed to slashing Ann Marie's tires, violating the order of protection, and setting her house on fire.

Shortly after these incidents, Ann Marie quit her job and left the state.  She testified that after the move her older daughter  earned lower grades, had difficulty sleeping, and had become aggressive, abusive, and suicidal.  At the time of the sentencing hearing, the daughter was in therapy.

The presentence report shows that defendant had prior convictions of illegal transportation of alcohol, driving with a suspended license, and driving under the influence of alcohol (DUI).  Other evidence at the hearing reflected defendant's problems with drugs and alcohol.  Greg Fields, a case manager with Treatment Alternatives for Safe Communities, opined that defendant was addicted to alcohol and cocaine.  Defendant had attempted suicide several times and was taking psychotropic medication.

Defendant testified that he had been abusing alcohol since age 18.  As a result of the DUI conviction, the court ordered him to undergo alcohol treatment.  He went to the first class drunk and eventually stopped attending classes when he concluded that they were a "sham."  He never thought of himself as an alcoholic.

Defendant said that after surgery in 1996 he stopped working and stayed home with his children.  He cared for the children while his wife worked.  He said that he committed the offenses while drunk and he never actually meant to hurt anyone.  He cried when he found out that his daughter had been traumatized by his actions.  He further testified, "I seen myself in the mirror and punched myself in the face till both my eyes were closed and I could just see no more."

Wade Thompson, a mental health worker at the Kane County jail, testified that defendant was placed on a suicide watch at the jail.  He attempted suicide several times.  Defendant told Thompson that he was angry because Ann Marie had lied about him and that, because she had lied, she had given herself "the death penalty."  Defendant said that if he ever got probation he would "go get her."

The court sentenced defendant to six years' imprisonment for arson and three years' imprisonment for aggravated battery. The court ordered the sentences to be served consecutively, finding that defendant would continue to be a danger to Ann Marie.  The court imposed sentences for additional misdemeanors, with those sentences to be served concurrently with the felony sentences and with each other.  After the court denied his motion to reconsider the sentences, defendant perfected this appeal.

Defendant first contends that the six-year sentence for arson failed to account for his rehabilitative potential and, accordingly, was an abuse of discretion.  He argues that he had an insignificant criminal history, that the offenses were the result of a momentary loss of control due to his alcohol use, and that he never intended to harm anyone.

The trial court has broad discretion in sentencing and its  decision is entitled to great deference.  
People v. Perruquet
, 68 Ill. 2d 149, 154 (1977).  The trial court is granted such deference because it has a superior opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.  
People v. Stacey
, 193 Ill. 2d 203, 209 (2000); 
Perruquet
, 68 Ill. 2d at 154.  Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.  
People v. Streit
, 142 Ill. 2d 13, 19 (1991).  Although the sentencing court is required to consider a defendant's rehabilitative potential, it need not accord that factor greater weight than the seriousness of the offense.  
People v. Coleman
, 166 Ill. 2d 247, 261 (1995).

The six-year sentence was not an abuse of discretion.  It is only two years longer than the minimum sentence for a Class 1 felony.  See 730 ILCS 5/5--8--1(a)(4) (West 1998).  Setting his wife's house on fire was not, as defendant claims, the result of a momentary loss of control due to alcohol use, but the culmination of a nearly week-long campaign of harassment against her.  Although defendant seeks to blame his conduct on his alcoholism, he was given a prior opportunity to obtain treatment, but refused to take it seriously.  It is doubtful that defendant has significant rehabilitative potential unless he can control his alcohol and drug problems, something he has thus far been unable or unwilling to do.

Defendant alternatively contends that the court abused its discretion by ordering the six-year and three-year sentences to run consecutively.  He emphasizes that the trial court characterized his criminal history as "not significant."  He again argues that the crimes were the result of a momentary loss of control due to alcohol use and that there is no evidence that he poses a continuing threat to the public.

Section 5--8--4(b) of the Unified Code of Corrections provides in relevant part as follows:

"The court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record[.]"  730 ILCS 5/5--8--4(b) (West 1998).

 Consecutive sentences should be imposed sparingly (
People v. O'Neal
, 125 Ill. 2d 291, 298 (1988)) and should be imposed only where the circumstances of the offense and defendant's history and character indicate that a consecutive term is required to protect the public from his further criminal conduct.  
People v. Clark
, 278 Ill. App. 3d 996, 1006 (1996).

 While defendant does not have a long criminal history, the record supports the trial court's finding that he will continue to be dangerous.  He was convicted of a series of crimes committed against his wife.  He repeatedly expressed his rage when his wife showed that she no longer wanted him to be a part of her life, and he terrorized her when she would not accede to his wishes.  Defendant continued to threaten Ann Marie even while he was in jail.  The record amply supports the conclusion that defendant would continue to be a threat to his wife and, indirectly, his children, if he were released from prison.  Thus, the court's imposition of consecutive sentences was not an abuse of discretion.

In a supplemental brief, defendant contends that his consecutive sentences must be vacated in light of the Supreme Court's decision in 
Apprendi
.  There, the court struck down a New Jersey statute that allowed the trial court to impose a five-year sentence beyond what would normally have been the statutory maximum if the court found by a preponderance of the evidence that defendant acted in order to intimidate an individual or group because of race, color, gender, or other similar factors.  The court held that the New Jersey scheme defeated a defendant's right to have a jury determine that he is guilty of every element of an offense beyond a reasonable doubt.  See 
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366-67.

Apprendi
 does not apply in this situation.  Although defendant presents his 
Apprendi
 claim as a sentencing issue, the constitutional rights effectuated by that decision were the right to a jury trial and the right to have the state prove all the elements of the offense beyond a reasonable doubt.  In other words, the argument that the Supreme Court accepted in 
Apprendi
 was not that Apprendi's sentence was too long but, rather, that defendant had a right to have a jury decide whether the State proved beyond a reasonable doubt the factor that resulted in the longer sentence.  Here, defendant waived those rights by pleading guilty.

A defendant who pleads guilty does not have the same appeal rights as one convicted following a trial.  
People v. Wendt
, 283 Ill. App. 3d 947, 956 (1996).  Generally, after pleading guilty, a defendant may not raise claims of the deprivation of constitutional rights that occurred before the entry of the plea.  
Wendt
, 283 Ill. App. 3d at 957.  Before defendant entered his plea, the court informed him of the sentencing ranges for the offenses and specifically admonished him of the possibility of consecutive sentences.  Having waived a jury trial on all issues, defendant cannot now claim that he was deprived of the right to have a jury determine the issue of his future dangerousness.  Similarly, he cannot claim that he was unfairly deprived of the right to have the State prove that point beyond a reasonable doubt.

Although 
Apprendi
 itself was an appeal following a guilty plea, the defendant there expressly reserved the right to challenge on appeal the constitutionality of the sentence-enhancement statute.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352.  Moreover, the indictment did not allege that Apprendi committed the crimes with an improper purpose; therefore, his guilty plea did not waive a jury trial as to that element.  See 
State v. Apprendi
, 304 N.J. Super. 147, 163, 698 A.2d 1265, 1273 (1997) (Wecker, J., dissenting).

Here, by contrast, the trial court did not find any element not alleged in the indictment.  The court specifically admonished defendant that consecutive sentences based on his future dangerousness were a possibility. 
 The court based its finding of future dangerousness not on the presence of an additional factual element but on the number and nature of defendant's crimes.  By his plea, defendant declined to place the number and nature of his crimes in issue.  See 
State v. Cody
, ___ Kan. App. 2d ___, ___, 10 P.3d 789, 790-91 (2000); 
Weeks v. State
, 761 A.2d 804, 806 (Del. 2000).  This court has declined to apply 
Apprendi
 to consecutive sentences imposed under section 5--8--4(b) even where the defendant was raising the claim following a jury trial.  
People v. Hindson
, No. 2--99--1360, slip op. at 17 (March 2, 2001).  This court observed that the trial court based its finding of future dangerousness primarily on defendant's criminal record, which 
Apprendi
 recognized as an exception to the requirement of proof beyond a reasonable doubt.  The other factors the court recited in support of consecutive sentences "merely constituted other circumstances evidencing the need to protect the public *** from further criminal conduct by defendant."  
Hindson
, slip op. at 17.  Under those circumstances, we held 
Apprendi
 inapplicable.  
Hindson
, slip op. at 17.  

Moreover, defendant filed only a motion to reconsider the sentence, not a motion to withdraw the plea.  If we vacated his sentence on 
Apprendi
 grounds and remanded the cause, it is unclear what relief the circuit court could provide.  That court would not be able to effectuate defendant's rights to a jury trial and to proof beyond a reasonable doubt in any case.  Thus, defendant may not raise an 
Apprendi
 claim at this stage of the proceedings.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

HUTCHINSON, P.J., and O'MALLEY, J., concur.