No. 2--00--0641
_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 SECOND DISTRICT
_________________________________________________________________

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court
ILLINOIS, ) of Lake County.
 )
 Plaintiff-Appellee, ) No. 00--CF--114
 )
v. )
 )
ANNETTE M. PALMER, ) Honorable
 ) Barbara C. Gilleran-Johnson
 Defendant-Appellant. ) Judge, Presiding.
_________________________________________________________________

 JUSTICE BYRNE delivered the opinion of the court:
 As the result of a partially negotiated guilty plea, defendant,
Annette M. Palmer, pleaded guilty to the offense of armed violence premised
on aggravated battery. The January 28, 2000, information alleged in
pertinent part that defendant, "while armed with a dangerous weapon, a
bludgeon, *** intentionally and without legal justification cut Pastor
Escamilla about the body thereby causing great bodily harm [to him]." See
720 ILCS 5/12--4(a), 33A--2 (West 1998). This offense is a Class 2 felony
(720 ILCS 5/33A--1(c)(3), 33A--3(b) (West 1998)) having a normal sentencing
range of three to seven years' imprisonment (730 ILCS 5/5--8--1(a)(5) (West
1998)). Under certain provisions of the Unified Code of Corrections
(Code), an extended sentence of 7 to 14 years' imprisonment may be imposed
(730 ILCS 5/5--8--2(a)(4) (West 1998)) if the court finds certain
aggravating factors ("facts") were applicable such as where the offense was
accompanied by exceptionally brutal or heinous behavior indicative of
wanton
cruelty (wanton cruelty) (730 ILCS 5/5--5--3.2(b)(2) (West 1998)), or the
victim was a person 60 years of age or older at the time of the offense
(age) (730 ILCS 5/5--5--3.2(b)(4)(ii) (West 1998)). There was no agreement
as to the sentence. It appears that the trial court imposed an extended
sentence of 10 years' imprisonment based on its consideration at the
sentencing hearing of two factors or "facts"--wanton cruelty and age.
 On June 2, 2000, following the denial of defendant's motion to
reconsider the sentence, defendant timely appealed. Defendant argues that
her extended sentence must be reduced to a nonextended sentence because, in
violation of her right to due process, the enhancing or aggravating factors
(wanton cruelty and age) were not charged, submitted to a jury, and proved
beyond a reasonable doubt.
In support of her position she relies on Apprendi v. New Jersey, 530 U.S.
466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) (Apprendi). For the reasons
that we shall explain, we agree with defendant. We vacate the sentence and
remand the cause for resentencing consistent with the principles enunciated
in Apprendi and with the views expressed herein.
 The record further reveals that on January 28, 2000, defendant
pleaded guilty to the armed violence charge and, as part of the plea
agreement, the State nol-prossed the charges of attempted first-degree
murder, aggravated battery, and aggravated battery of a senior citizen. It
appears that part of the consideration for the plea was that the Class 2
felony was a probationable offense. The court read the armed violence
charge to defendant. The trial court informed defendant, among other
things, that the offense was "technically probationable" and that the
sentencing range for the offense was three to seven years' imprisonment.
The court also stated that defendant could receive a term of 7 to 14 years'
imprisonment "if you have a previous conviction within the last 10 years
*** or if *** there is aggravation that qualifies you for that category."
The court later added that it did not know whether defendant qualified for
an extended term due to a previous felony conviction or "if the injuries
are severe enough for this court to consider an extended term sentence.
It's possible. But I underline the word possible." The court explained
generally the various rights that defendant would give up by pleading
guilty.
 The State presented a factual basis for the plea, which is briefly
summarized here. The victim, Escamilla, was drinking with defendant.
Escamilla fell asleep. When he woke up, defendant was stabbing him. No
weapon was found, but defendant claimed she used a garden tool (bludgeon)
to attack Escamilla. Defendant went to the hospital with blood on her
body. In her statement, she claimed that she had been sexually assaulted.
The victim later arrived at the hospital and had 57 stab wounds. (The
record shows that there is a slight discrepancy in the exact number of stab
wounds.) The State characterized the wounds as "great bodily harm." The
wounds required stitches, sutures, and surgery. A police investigation
determined that defendant did the stabbing. The State asserted that the
sexual assault claim was unfounded. Defense counsel added that it was
defendant who called the police initially, and the police transported her
to the hospital where she remained for about five hours. When defendant
saw Escamilla at the hospital, she called the police a second time. She
later went voluntarily to the police department. She stayed in the lockup
for about three days before she was charged. The trial court accepted the
factual basis and the waiver of defendant's right to a trial and set the
matter for sentencing.
 The sentencing hearing began on February 29, 2000. The State
presented evidence in aggravation. The complaining witness read the victim
impact statement expressing his fears since the commission of the offense.
An employee testified regarding a fight between defendant and another
inmate in December 1999. With the aid of photographs that were admitted
into evidence, Sean Hilbert, an investigator for the North Chicago police
department, testified regarding the wounds the victim sustained and the
conditions found at the scene of the crime. Hilbert stated at one point
that the victim had 52 wounds. Hilbert also testified that defendant
claimed the victim had sexually assaulted her. On cross-examination, the
investigator admitted that the incident happened at midnight and that
Escamilla did not arrive at the hospital for medical treatment until the
following morning, almost 12 hours later.
 Brian Gorcowske, an Elgin police detective, testified regarding his
investigation of a June 19, 1999, incident in which defendant's boyfriend,
Kevin Childress, suffered a fatal stab wound during the course of a
domestic dispute. Gorcowske determined that defendant inflicted the stab
wound. Defendant had claimed alternatively that she acted in self-defense
or the fatal wound was an accident. The State sought to charge defendant
with second-degree murder, but the grand jury returned a "no true bill."
Gorcowske admitted that on a prior occasion Childress had been arrested and
charged for punching defendant in the eye. That charge was subsequently
dropped because defendant did not choose to have him prosecuted.
 In mitigation, defendant's father testified regarding the positive
aspects of his relationship with defendant. Defendant had been in abusive
relationships. He believed she needed counseling, and he believed he could
be of assistance to her.
 The State argued that there were aggravating factors present.
Among other things, the State argued that defendant should be given an
extended sentence because of the age of the victim and because the offense
was accompanied by brutal or heinous behavior indicative of wanton cruelty.
 The State emphasized that there were 54 wounds.
 Defense counsel argued that there were mitigating circumstances and
that defendant had been in situations where she had been abused or
battered. He claimed the wounds were not indicative of wanton cruelty and
characterized them as slashes rather than stabs. He asked the court to
consider defendant's need for social services and substance abuse
counseling and her potential for rehabilitation; he sought a period of
probation and a six-month jail term.
 The trial court considered various aggravating and mitigating
factors. The court noted in particular that defendant should have
contemplated that 54 wounds would cause harm. The court could not
determine that defendant acted under strong provocation or had grounds
tending to excuse or justify her conduct. The court considered defendant's
criminal history and her cocaine use and determined that she was likely to
commit another crime. The court found that the nature of the (great)
bodily harm made the truth-in-sentencing provisions applicable (see 730
ILCS 5/3--6--3(a)(2) (iii) (West 1998) (for certain enumerated offenses,
defendant must serve 85% of the sentence where there is a finding of great
bodily harm to victim). The court concluded that an extended term of 10
years' imprisonment was warranted because the victim was 67 years old and
there were 54 to 57 stab wounds.
 At the hearing on defendant's motion to reconsider the sentence,
defense counsel argued among other things that the offense was not
accompanied by brutal or heinous behavior and that, had the case gone to
trial, the factual circumstances could have shown that defendant's
unreasonable belief--that the amount of force used was justified in self-
defense--was inconsistent with a finding of behavior indicative of wanton
cruelty. In support of his argument, counsel cited People v. Evans, 87
Ill. 2d 77, 88 (1981).
 The trial court denied the motion to reconsider, but issued a
corrected mittimus on June 2, 2000, to show that the armed violence offense
was a Class 2 felony. We note that the original sentencing order of March
21, 2000, states that defendant's term of imprisonment for armed violence
is 10 years. The order further notes, "Court finds offense was brutal and
heinous" and "Court also finds great bodily harm."
 Defendant argues essentially that the sentencing procedure that was
used to enhance her sentence is unconstitutional. In support of her
position, she relies on the general rule of Apprendi, 530 U.S. at ___, 147
L. Ed. 2d at 455, 120 S. Ct. at 2362-63, which states, "Other than the fact
of a prior conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a jury, and
proved beyond a reasonable doubt." Defendant asserts that the armed
violence charge to which she pleaded guilty did not encompass the
additional "facts" or "elements" of wanton cruelty and age, which the trial
judge found and then used to enhance her sentence beyond the normal,
statutory maximum penalty.
 In Apprendi, the defendant, Charles C. Apprendi, Jr., pleaded guilty
to certain firearms violations. He fired several bullets into the home of
an African-American family. The prosecutor for the State of New Jersey
reserved the right to request that the trial court impose an enhanced
sentence based on a hate-crime statute. The defendant reserved the right
to challenge the sentence enhancement on constitutional grounds. None of
the charges referred to the hate-crime statute and none alleged that
Apprendi acted with a racially biased purpose.
 Apprendi was sentenced to an extended term after the prosecutor moved
to enhance the sentence. Under the New Jersey statute, the judge was
called upon to extend the sentence if the judge found, by a preponderance
of the evidence, that the defendant, in committing the crime, acted with a
purpose to intimidate the victim based on the race, color, gender,
handicap, religion, sexual orientation, or ethnicity of the victim.
Pursuant to the statute, the maximum 10-year prison sentence could
effectively be doubled if the requisite finding was made. The trial court,
sitting without a jury, found by a preponderance of the evidence that the
shooting was racially motivated and sentenced the defendant to a 12-year
term of imprisonment for the firearms charge.
 The United States Supreme Court characterized the defendant's mental
state (purpose to intimidate) as an element of the substantive offense
rather than merely a sentencing factor. See Apprendi, 530 U.S. at ___, 147
L. Ed. 2d at 457-58, 120 S. Ct. at 2366. The Court explained that due
process of law requires that the accused be afforded a jury determination
that he is guilty beyond a reasonable doubt of every element of the crime
with which he is charged, that is, due process protects the accused against
a conviction except upon proof beyond a reasonable doubt of every fact
necessary to constitute the crime with which he is charged. Apprendi, 530
U.S. at ___, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355-56.
 The Court pointed out that it is unconstitutional for a legislature
to remove from the jury the assessment of facts that increase the
prescribed range of penalties to which a criminal defendant is exposed and
that it is clear that such facts must be established beyond a reasonable
doubt. Apprendi, 530 U.S. at ___, 147 L. Ed. 2d at 455, 120 S. Ct. at
2363. The Court concluded that the New Jersey procedure was an
unacceptable departure from the jury tradition, reversed the ruling of the
supreme court of New Jersey, and remanded the cause for further
proceedings. The Court observed that its decision was foreshadowed by
Jones v. United States, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215
(1999) (under fifth amendment due process clause, any fact other than prior
conviction that increases maximum penalty for crime must be charged in an
indictment, submitted to a jury, and proved beyond a reasonable doubt).
 For a fuller understanding of the Court's ruling in Apprendi, it is
instructive to examine briefly the New Jersey appellate court decision and
the dissent therein in particular. State v. Apprendi, 304 N.J. Super. 147,
698 A.2d 1265 (N.J. Super. Ct. App. Div. 1997), aff'd, State v. Apprendi,
159 N.J. 7, 731 A.2d 485 (1999), rev'd, Apprendi v. New Jersey, 530 U.S.
466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In the appellate decision
of State v. Apprendi, the reviewing court held that the hate-crime
statute's authorization for extended sentencing, based upon the trial
judge's finding by a preponderance of the evidence that the defendant had a
biased motive, did not violate the due process requirement that the state
must prove the elements of the crime beyond a reasonable doubt. The
majority treated the defendant's bias or motive as a sentencing factor
rather than as an element of the offense.
 In the dissent (State v. Apprendi, 304 N.J. Super. at ___, 698 A.2d
at 1272-75 (Wecker, J.S.C., dissenting)), Judge Wecker explained that the
defendant's rights to a trial by jury and to be proved guilty beyond a
reasonable doubt were violated because the defendant's motive to intimidate
was an element of the crime that increased the sentence for the crime.
Judge Wecker noted that the defendant did not raise the right to an
indictment by a grand jury (the indictment did not allege the prohibited
purpose element); his plea did not provide a factual basis for the
prohibited purpose; and he denied such a purpose at the sentencing hearing.
 The dissenting judge explained that, while the defendant waived his right
to a jury trial on the underlying charge, he did not waive that right, or
the right to proof beyond a reasonable doubt, with respect to the
prohibited purpose element. State v. Apprendi, 304 N.J. Super. at ___,
698 A.2d at 1273.
 Judge Wecker concluded that, where the state intends to seek a
mandatory extended sentence because the underlying crime is accompanied by
the forbidden purpose set forth in the hate-crime statute, then, unless the
defendant expressly waives a jury, only a jury can find the defendant
guilty and then only upon proof beyond a reasonable doubt. Judge Wecker
further concluded that the defendant's extended sentence should be vacated
and the cause remanded for resentencing within the normal sentencing range
for the underlying offense. State v. Apprendi, 304 N.J. Super. at ___,
698 A.2d at 1275. The United States Supreme Court's decision in Apprendi,
which is based on these due process concerns, is consistent with Judge
Wecker's dissent.
 Recently, this court applied the Apprendi rule in People v.
Chanthaloth, 318 Ill. App. 3d 806 (2001). There, a jury found the
defendant guilty of home invasion and residential burglary. The trial
court imposed a 40-year extended term and a consecutive 4-year nonextended
term for the respective offenses. The trial court, sitting without a jury,
found three aggravating factors that rendered the defendant eligible for
the extended sentence for the home invasion offense: the crime was
exceptionally brutal and heinous; the victim was over the age of 60; and
the victim was physically handicapped at the time of the offense. On
appeal, this court held that the extended sentence for home invasion
violated the Apprendi rule. This court determined that the aggravating
factors were in effect elements of the offense. See People v. Hope, No. 2--
00--0417 (December 28, 2001) (explaining Chanthaloth).
 In Chanthaloth, although evidence of the age of the victim had been
submitted to a jury and proved as an element of the offense beyond a
reasonable doubt in accordance with Apprendi, this court nevertheless
vacated the defendant's extended sentence because it appeared that the
trial court had considered not only the victim's age, but also the victim's
disability and the brutal nature of the crime. The cause was remanded for
resentencing consistent with the rule of Apprendi. But cf. People v.
Rhoades, 323 Ill. App. 3d 644 (2001) (exceptionally brutal and heinous
nature of first-degree murder of minor was held to be proved beyond a
reasonable doubt by defendant's guilty plea where the plea and sentence
were fully negotiated, defendant was specifically and clearly admonished
regarding the possible sentence of life imprisonment if the court found his
conduct brutal and heinous, and the State had sought the death penalty).

 In People v. Thurow, 318 Ill. App. 3d 128 (2001), petition for leave
to appeal allowed, 194 Ill. 2d 580 (2001), the reviewing court determined
that a sentence for enhanced involuntary manslaughter was unconstitutional
under Apprendi where the jury was not instructed to make a finding beyond a
reasonable doubt with respect to an element of the offense--that the victim
was a family or household member. In sentencing the defendant to an
extended term of eight years' imprisonment, the trial judge found that the
victim was a child under the age of 12, a factor that was not presented to
the jury.
 The Thurow court observed that the Illinois statute in question
imposed no burden of proof on the judge but merely stated that certain
factors may be considered by the judge in imposing the extended term. The
reviewing court held that section 5--5--3.2(b)(4)(i) of the Unified Code of
Corrections (730 ILCS 5/5--5--3.2(b)(4)(i) (West 1998)) is unconstitutional
under Apprendi to the extent that it allows the trial court to impose an
extended sentence "based on the age of the victim where that specific
finding is not charged to the jury." Thurow, 318 Ill. App. 3d at 135.
 In People v. Johnson, No. 5--99--0637 (October 23, 2001), following a
bench trial, the defendant was found guilty of attempted murder, aggravated
battery, and unlawful possession of a weapon by a felon. At the sentencing
stage, the trial judge found that the attempted murder was accompanied by
exceptionally brutal behavior indicative of wanton cruelty. Based on this
additional finding of fact, the trial judge imposed an extended sentence of
50 years' imprisonment where the normal maximum sentence allowed would
otherwise have been a 30-year prison sentence. The reviewing court held
that this finding involved an added element of the offense; that the
judge's finding violated the Apprendi rule; and that this element should
have been charged and proved beyond a reasonable doubt before a jury. The
reviewing court reduced the sentence to the 30-year normal maximum term.
 Our careful consideration of Apprendi, the dissent in State v.
Apprendi, Chanthaloth, Thurow, and Johnson compel us to conclude that the
sentencing procedure in the present case violated the Apprendi rule.
During the plea proceedings, defendant did not plead guilty to a charge
that alleged the offense was accompanied by exceptionally brutal or heinous
behavior, or that the victim was a person 60 years of age or older. These
sentence-enhancing "facts" were not clearly and specifically made part of
the factual basis necessary for the trial court to accept a plea that was
knowingly and voluntarily entered with respect to the additional "facts."
The admonishment to defendant was merely general with respect to the
possibility of an extended sentence, and there was no mention of "brutal
and heinous" conduct or the age of the victim as part of the plea. As in
Apprendi, when defendant pleaded guilty, she did not know that she was
giving up her right to have the State prove beyond a reasonable doubt to a
jury that the crime was accompanied by brutal and heinous conduct
indicative of wanton cruelty, or that the victim was 60 years of age or
older. A defendant should not be induced to plead guilty to one offense and
then be sentenced for another offense.
 Since these additional sentence-enhancing "facts" in effect
constituted elements of the offense that warranted punishment beyond the
normal maximum sentence, the judge's findings during the sentencing stage
violated Apprendi. Absent a specific waiver by defendant of a trial by
jury and proof beyond a reasonable doubt as to these specific elements and
a clear and complete admonishment to defendant regarding the elements and
the applicable enhanced penalties, these elements should have been charged
and proved to a jury beyond a reasonable doubt. We believe that Apprendi
requires no less to avoid violating a defendant's constitutional right of
due process of law when entering a guilty plea.
 The State argues that our decision in People v. Chandler, 321 Ill.
App. 3d 292 (2001), calls for a different result. We disagree. In
Chandler, the defendant pleaded guilty to a series of offenses and was
sentenced to consecutive terms of six years' imprisonment for arson and
three years' imprisonment for aggravated battery. The defendant pleaded
guilty to more than one crime, and the court did not find him guilty of any
elements not alleged in the indictment. The court specifically admonished
defendant that consecutive sentences based on his future dangerousness were
a possibility.
 A court has the discretion to impose a consecutive sentence based on
the nature and circumstances of the offense and the history and character
of the defendant where the court is of the opinion that such a term is
required to protect the public from further criminal conduct by the
defendant. 730 ILCS 5/5--8--4(b) (West 1998). In Chandler, the court
based its finding of the defendant's future dangerousness not on the
presence of an additional factual element but on the number and nature of
the defendant's crimes. In other words, the trial court based its finding
of future dangerousness on defendant's criminal record. A defendant's
prior crimes constitute recidivism, which Apprendi recognized as an
exception to the requirement that the offenses be proved beyond a
reasonable doubt before a jury. See Chandler, 321 Ill. App. 3d at 296;
People v. Watson, 322 Ill. App. 3d 164 (2001); People v. Lathon, 317 Ill.
App. 3d 573, 583-88 (2000). Finally, we observe that our supreme court has
held that the imposition of consecutive sentences does not violate the rule
of Apprendi. People v. Wagener, 196 Ill. 2d 269, 286-287 (2001). As can
be seen from our discussion, Chandler is distinguishable on its facts, and
it should be limited to those facts.
 We recognize that in Chandler the court broadly stated, "Having
waived a jury trial on all issues, defendant cannot now claim that he was
deprived of the right to have a jury determine the issue of his future
dangerousness. Similarly, he cannot claim that he was unfairly deprived of
the right to have the State prove that point beyond a reasonable doubt."
Chandler, 321 Ill. App. 3d at 297. However, we do not believe that an
expansive reading of Chandler is warranted here, as the State urges, so
that the defendant in this case can be said to have waived all the rights
guaranteed under Apprendi. To the extent that Chandler even remotely
suggests that a guilty plea waives deficiencies in the charge, the
admonishments, and the factual basis necessary to a knowing and voluntary
plea as to all the elements of an offense, including sentence-enhancing
elements, we decline to follow Chandler. To do otherwise would be to
disregard Apprendi itself.
 We hereby vacate defendant's extended-term sentence. Defendant has
not challenged her conviction, and it is therefore affirmed. On remand,
defendant must be resentenced in accordance with the rule of Apprendi and
the views we have expressed herein. See Chanthaloth, 318 Ill. App. 3d at
818.
 The judgment of the circuit court of Lake County is affirmed in part
and vacated in part, and the cause is remanded with directions.
 Affirmed in part and vacated in part; cause remanded with directions.

 CALLUM, J., concurs.
 PRESIDING JUSTICE HUTCHINSON, dissenting:
 I must again dissent from the Apprendi analysis and conclusion
reached by the majority. I would affirm the order sentencing the defendant
to an extended term of 10 years' imprisonment for the offense of armed
violence, a Class 2 felony. I would do so for two reasons: (1) defendant
entered a guilty plea to the charge after proper mandatory admonitions and
notice of the possibility of an extended-term sentence, and (2) the age of
a victim is an easily proved fact that does not require a trial court to
weigh or examine a defendant's mental state, and here the victim's age was
not disputed.
 Most recently, in People v. Black, No. 2--00--0189 (February 18,
2002), I dissented after a defendant entered a guilty plea, received an
extended sentence, and then challenged his sentence on the basis of
Apprendi. In that case, the majority accepted the Apprendi argument and
remanded the cause for a new sentencing hearing because the trial court had
used the age of the victims as the basis for the extended-term sentence.
The reviewing court found that the victims' ages were not identified at the
time of the plea but were specifically articulated by the trial court
during the sentencing phase of the case. While conceding that the
defendant in Black had been advised that an extended-term sentence was
possible and that the number of years for such extended-term sentence had
been identified, the majority held that, because the defendant was not
forewarned, prior to sentencing, regarding the factors that could result in
such a sentence, the principles of Apprendi had been violated.
 My dissent in Black focused on the defendant's voluntary guilty plea,
the fact that he had notice of the victims' ages based upon statements he
made during the commission of the offense, and his waiver of all
nonjurisdictional errors or irregularities as a result of the voluntary
guilty plea. The situation, in my opinion, is no different in this case.
 Here, the defendant entered a voluntary plea of guilty to the charge
of armed violence premised on aggravated battery. Another charge arising
out of the same incident and involving the same victim, aggravated battery
to a senior citizen, was nol-prossed at that time, and there was evidence
before the trial court that the defendant and the victim were involved in a
personal relationship. The trial court specifically noted the number of
stab wounds and the age of the victim when the extended-term sentence was
imposed. Therefore, the defendant was on notice of the victim's age by
virtue of her personal relationship with him and the dismissed charge, and
she pleaded guilty, waiving all nonjurisdictional errors and
irregularities.
 In coming to my conclusion in this case, and as I came to my
conclusion in the Black case, I relied on People v. Chandler, 321 Ill. App.
3d 292 (2001). In particular, this court said in Chandler:
 "A defendant who pleads guilty does not have the same appeal
 rights as one convicted following a trial. [Citation.] Generally,
 after pleading guilty, a defendant may not raise claims of the
 deprivation of constitutional rights that occurred before the entry of
 the plea. [Citation.] Before defendant entered his plea, the court
 informed him of the sentencing ranges for the offenses and
 specifically admonished him of the possibility of consecutive
 sentences. Having waived a jury trial on all issues, defendant cannot
 now claim that he was deprived of the right to have a jury determine
 the issue of his future dangerousness. Similarly, he cannot claim
 that he was unfairly deprived of the right to have the State prove
 that point beyond a reasonable doubt." People v. Chandler, 321 Ill.
 App. 3d at 297.
 I also take issue with the majority on another Apprendi-related
matter as it relates to its reliance on People v. Chanthaloth. As I noted
in another recent dissent (People v. Hope, No. 2--00--0417, (December 28,
2001)), I was the author of Chanthaloth, and I disagreed with the
majority's use of that case to mandate a remand for resentencing when the
victim's age was used to extend a sentence. In the Hope dissent, I noted
that several other cases were decided after Chanthaloth that sharpened and
clarified the Illinois sentencing law as it relates to Apprendi challenges,
and, in particular, I cited a First District case, People v. Blackwell, 325
Ill. App. 3d 354 (2001). Hope, slip op. at 14-15.
 Reasoning that a trial court need find only one single statutory
factor in aggravation to impose an extended sentence (Blackwell, 325 Ill.
App. 3d at 359), the majority there determined that, although an Apprendi
violation may have occurred where the age of the victim was not submitted
to a jury, the victim's age was known, it was undisputed by the parties, it
was easily proved, and, therefore, it was harmless error. See also People
v. Rohlfs, 322 Ill. App. 3d 965 (2001)(failure to ask the jury to determine
the victim's age may have been harmless error where the victim testified
she was 93 years old, there was no dispute regarding her age, and no
reasonable jury could have found her to be under the age of 60).
 Returning to this case, the defendant was on notice of the victim's
age, the victim's age was not disputed by the parties, and the victim's age
was a fact easily proved. Furthermore, the determination of the victim's
age did not require that the trial court weigh any evidence or examine the
defendant's mental state. Therefore, the trial court's use of the victim's
age to extend the sentence of the defendant was, at worst, harmless error.
 Accordingly, I would affirm the trial court's order imposing an
extended-term sentence upon defendant.