THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY WILLIAMS, Defendant-Appellant.

Second District   No. 2—00—0657

Opinion filed April 9, 2002.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Stephen E. Norris and Gerry R. Arnold, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Timothy Williams, appeals from the June 12, 2000, order of the circuit court of Lake County denying his motion to reconsider sentence or to withdraw his plea of guilty. The defendant was sentenced to 39 years' imprisonment following a partially negotiated plea agreement in which he pleaded guilty to one count of attempted first-degree murder (720 ILCS 5/8—4(a), 9—1(a)(1) (West 1996)). On appeal, the defendant argues that (1) his plea was not made voluntarily because he did not realize that he could receive a sentence in excess of 30 years' imprisonment; (2) his extended-term sentence was improper under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); and (3) he is entitled to an additional day of credit against his sentence.

On November 5, 1997, the defendant was charged by indictment with one count of attempted first-degree murder (720 ILCS 5/8—4(a), 9—1(a)(1) (West 1996)), three counts of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(2) (West 1996)), one count of aggravated kidnaping (720 ILCS 5/10—2(a)(3) (West 1996)), five counts of criminal sexual assault (720 ILCS 5/12—13(a)(1) (West 1996)), five counts of aggravated battery (720 ILCS 5/12—4(a) (West 1996)), and two counts of unlawful restraint (720 ILCS 5/10—3(a) (West 1996)). The indictment alleged that, between July 1, 1997, and October 21, 1997, the defendant confined the victim, Juanita Meneses, against her will by tying her up with clothes and string. During this time, the defen-

dant hit the victim with a hammer and cut her face with a knife. The indictment further alleged that the defendant performed numerous sexual acts upon the victim, including inserting a broomstick and a bottle into the victim's vagina. The defendant also allegedly tried to kill the victim by placing a plastic bag over her face.

On April 21, 1998, after the defendant indicated that he was interested in entering a plea agreement, the trial court conducted a conference pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402). After the conference, the trial court stated for the record that the defendant could be sentenced to 120 years' imprisonment if convicted of the most serious offenses charged in the indictment. The trial court explained that the evidence in aggravation was substantial. The trial court noted that the victim had suffered permanent scarring to her face and vaginal injuries. The trial court further noted that the State had made an "extremely fair" offer that would allow the defendant to plead guilty to attempted first-degree murder. The trial court noted that this felony had a sentencing range of 6 to 30 years' imprisonment. The trial court informed the defendant that, based on the representations as to the evidence in aggravation and on the photographs it had been shown, it would have to sentence the defendant to the maximum term or to a term near the maximum. After the defendant requested time to consider the State's offer, the State indicated that it would keep its offer open until the next scheduled court date. On May 4, 1998, the State informed the trial court, in the defendant's presence and after he had failed to accept the offer, that it was withdrawing the plea offer it had made to the defendant.

On June 9, 1998, the trial court granted the defendant's motion that he be given a mental examination to determine his fitness to stand trial. Two psychologists subsequently examined the defendant. Dr. John Dunne examined the defendant on behalf of the trial court, and Dr. Michael Gelbort examined the defendant on behalf of the defense. Dr. Dunne concluded in his report that the defendant was fit to stand trial or to plead guilty. Dr. Dunne explained that, at the time he examined the defendant, the defendant showed no evidence of psychosis or of having experienced any auditory hallucinations or delusional thinking. Dr. Dunne also noted that the defendant attempted to feign mental illness during the examination.

Conversely, Dr. Gelbort concluded in his report that the defendant was suffering from psychosis and was not fit to stand trial. Dr. Gelbort found that the defendant would lose contact with reality at times and then display internal disorganization and confusion. The defendant was also functioning at the level of a mentally retarded person. Dr. Gelbort also acknowledged, however, that there was a "likelihood" or

a "possibility" that the defendant was feigning mental illness. Dr. Gelbort's report indicated that the results of the defendant's cognitive and personality tests could be explained either by a psychosis or a crude attempt to manipulate the test results. His report indicated the defendant's responses to some of the questions had an odd or staged quality that are not inconsistent with those seen when a person is simulating psychopathology. Dr. Gelbort's report concluded that either schizophrenia or the defendant's feigning mental illness could be the cause of the defendant's condition.

On December 7 and 14, 1998, the trial court conducted a fitness hearing. The testimony of both Dr. Dunne and Dr. Gelbort was consistent with their respective reports. At the close of the hearing, the trial court found that the defendant was fit to stand trial. The trial court explained that it found the defendant to be understandable in court, although at times he would display racing thoughts and pressured speech. The trial court also expressly found that the defendant was very intelligent. The trial court noted that the defendant appeared to know exactly what he wanted, evidenced by the fact that he would often try to speak on behalf of his attorney.

On January 12, 1999, defense counsel informed the trial court that it had been negotiating an agreement with the State for the defendant to enter a plea of guilty. The State informed the trial court that its offer would remain open until January 15, 1999. Neither the State nor defense counsel presented any details of the negotiated plea agreement to the trial court on this date.

On January 15, 1999, the State informed the trial court that it had negotiated a plea agreement with the defendant. Under the agreement, the defendant would enter a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970), to one count of attempted first-degree murder. In exchange for his plea, the State agreed to nol-pros the other 16 charges in the indictment against the defendant. Before accepting the defendant's plea, the trial court admonished the defendant that he was not eligible for probation. The trial court also informed the defendant that the sentencing range for attempted murder was 6 to 30 years' imprisonment. However, the trial court further informed the defendant that, if certain aggravating factors were present, the defendant could be sentenced to an extended term of between 30 years' and 60 years' imprisonment. The defendant responded that he understood the penalties he could receive for pleading guilty. The defendant also stated that no promises had been made to him for pleading guilty other than that the other 16 charges that had been filed against him would be dismissed. After giving the defendant these admonishments, the trial court heard the factual basis for the plea and accepted the defendant's guilty plea.

Between March 16, 1999, and April 20, 1999, the trial court conducted a sentencing hearing. The State argued that the defendant should be sentenced to an extended term because his exceptionally brutal and heinous behavior towards the victim was indicative of wanton cruelty. Defense counsel responded that, based on the Rule 402 conference in April 1998, he did not believe that the defendant would be sentenced to an extended-term sentence. Defense counsel also explained that he had not informed the defendant that he could potentially receive a sentence in excess of 30 years' imprisonment.

At the close of the hearing, the trial court sentenced the defendant to an extended term of 39 years' imprisonment. The trial court explained that it had reviewed all of the psychological reports and found Dr. Dunne's report to be the most credible. The trial court found that the defendant had exhibited some mental health issues during the later proceedings. However, the trial court also found that the defendant had been very alert and understanding during the first nine months of the proceedings. The trial court additionally found that the defendant's apparently deteriorating mental condition was a result of his feigning mental illness. The trial court noted that there were several factors that militated in the defendant's favor for a shorter sentence, including his minimal criminal history and his lack of gang involvement. However, the trial court found that these factors did not outweigh the fact that the defendant had tortured the victim and that his conduct had been accompanied by exceptionally brutal and heinous behavior that was indicative of wanton cruelty. In sentencing the defendant, the trial court also ordered that he be given credit for the time that he had spent in pretrial custody.

On May 20, 1999, the defendant filed a motion to reconsider sentence or alternatively to vacate his guilty plea. The motion summarized the April 1998 Rule 402 conference and alleged that the defendant had never been advised that the sentence parameters described at the conference would not apply. The motion also alleged that defense counsel had informed the defendant that he would receive a sentence between 6 and 30 years' imprisonment.

On June 12, 2000, the trial court denied the defendant's motion to reconsider sentence or alternatively to vacate his guilty plea. The trial court explained that, prior to accepting the defendant's plea, it had admonished the defendant that he could be sentenced to an extended-term sentence. The defendant thereafter filed this timely notice of appeal.

The defendant's first contention on appeal is that his guilty plea was not entered voluntarily. The defendant contends that he entered his plea based on defense counsel's advice that he would not be

sentenced to a term exceeding 30 years' imprisonment. The defendant also argues that, in light of his mental condition and the trial court's prior statements during the proceedings, the trial court's admonishments were not sufficient to make him aware that he could receive an extended-term sentence.

■ A defendant has no absolute right to withdraw his guilty plea and bears the burden of demonstrating to the trial court the necessity of withdrawing his plea. *People v. Smithey*, 120 Ill. App. 3d 26, 31 (1983). It is within the sound discretion of the trial court to determine whether a guilty plea may be withdrawn, and, on appeal, this decision will not be disturbed unless it is an abuse of that discretion. *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993). No abuse of discretion will be found where the trial record refutes a defendant's assertions that his plea was not knowingly and voluntarily made. *People v. Fern*, 240 Ill. App. 3d 1031, 1041 (1993).

■ A court should allow a defendant to withdraw his plea where the plea was entered based on a misapprehension of the facts or the law or because of misrepresentations by counsel, where there is doubt of the defendant's guilt, where he has a defense worthy of consideration, or where the ends of justice will be better served by submitting the case to a jury. *People v. Canterbury*, 313 Ill. App. 3d 914, 918 (2000). In the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea. *Artale*, 244 Ill. App. 3d at 475. Rather, the burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression. *People v. Hale*, 82 Ill. 2d 172, 176 (1980). Moreover, a proper and meticulous admonition of the defendant according to Supreme Court Rule 402(b) (177 Ill. 2d R. 402(b)) cannot simply be ignored. *People v. Radunz*, 180 Ill. App. 3d 734, 742 (1989).

In *People v. Radunz*, 180 Ill. App. 3d 734 (1989), this court was confronted with a situation similar to that presented in the instant case. In *Radunz*, the defendant agreed to plead guilty to aggravated criminal sexual abuse in exchange for the State's dismissing another charge against him and recommending a term of probation, six months in the county jail, and a $500 fine. The trial court was never asked to concur in this agreement pursuant to Supreme Court Rule 402(d)(2). The defendant subsequently entered a plea of guilty before the trial court. The trial court admonished the defendant that, if he pleaded guilty, the court would have several sentencing alternatives, including sentencing the defendant to a term of imprisonment. The defendant explained that he understood this admonishment. The trial court

thereafter sentenced the defendant to four years' imprisonment. *Radunz*, 180 Ill. App. 3d at 737.

The defendant subsequently filed a motion to withdraw his guilty plea. At a hearing on the motion, the defendant testified that his attorney had told him that he had worked out a deal with the State to get him a term of probation and that the trial court would go along with it. The defendant acknowledged that the trial court had told him that it did not have to go along with the plea negotiations. However, based on his attorney's representations, the defendant did not worry about the trial court's admonishments. The defendant testified that he would not have pleaded guilty had he known the trial court would not go along with the negotiations. *Radunz*, 180 Ill. App. 3d at 738.

■ The trial court denied the defendant's motion to withdraw his guilty plea, and this court affirmed. We held that a guilty plea made in reliance on the incorrect advice of counsel as to the anticipated term of a sentence was still a voluntary plea. *Radunz*, 180 Ill. App. 3d at 742. We explained:

> "Trust in one's attorney is of utmost importance in our legal system. However, a defendant cannot be rewarded for disregarding the specific admonishments of the court. [The defendant] ignored the court's admonishments allegedly because his attorney informed him the court would go along with the plea agreement. This conduct cannot be condoned. The trial court did not err in rejecting defendant's claim that his guilty plea should be withdrawn because he was misled by his attorney." *Radunz*, 180 Ill. App. 3d at 742.

■ We believe that *Radunz* controls the disposition of the defendant's first contention. The defendant herein contends that he should have been allowed to withdraw his guilty plea since it was based on reliance on the improper advice that his attorney gave him. However, as in *Radunz*, we do not believe that the defendant's reliance on his attorney's advice as to the length of his sentence was justified when the trial court specifically admonished him that he could be sentenced to an extended-term sentence. See *Radunz*, 180 Ill. App. 3d at 742. As in *Radunz*, the defendant cannot be rewarded by ignoring such admonishments. See *Radunz*, 180 Ill. App. 3d at 742.

The defendant argues that *Radunz* is nonetheless distinguishable because in that case the trial court never indicated that it would go along with the proposed plea agreement. The defendant notes that at a hearing on April 21, 1998, the trial court indicated it would approve a plea agreement in which the defendant would be sentenced to a maximum of 30 years' imprisonment. Based on the trial court's representation, as well as his defense counsel's advice, the defendant argues that it was objectively reasonable for him to believe that he would be sentenced to a maximum of 30 years' imprisonment.

We find the defendant's attempt to distinguish *Radunz* to be without merit. Despite the defendant's contentions to the contrary, we do not believe that it was objectively reasonable for him to rely upon statements made by the trial court nine months before he was specifically admonished that he could receive an extended-term sentence. Although the trial court did inform the defendant that it found "extremely fair" the State's initial offer in which the defendant would be sentenced to a maximum of 30 years' imprisonment, it also informed the defendant the State was keeping its offer open only until the next court date. At the next court date, when the defendant failed to accept the plea agreement, the State informed the trial court that it was withdrawing its offer. Based on these facts, we do not believe that the defendant reasonably could believe that the State's same offer would be open nine months later.

Furthermore, we reject the defendant's contention that, due to his poor mental health, the trial court's admonishments were insufficient to make him realize that he potentially could be sentenced to a prison term in excess of 30 years. We note that the trial court conducted an extensive hearing as to the defendant's fitness and ultimately concluded that the problems the defendant was exhibiting were a result of his feigning mental illness. This finding was supported by the trial court's observations of the defendant as well as by Dr. Dunne's testimony. Even the defendant's expert, Dr. Gelbort, acknowledged that there was a possibility that the defendant was feigning his mental illness. Therefore, we cannot say that the defendant was suffering from any mental condition that prevented him from understanding the trial court's admonishments. As these admonishments sufficiently apprised the defendant that he potentially could receive an extended-term sentence, the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

■ The defendant's second contention on appeal is that he improperly received an extended-term sentence. The defendant argues that he received an extended-term sentence based on the trial court's finding that his offense was accompanied by the aggravating factor of exceptionally brutal and heinous behavior indicative of wanton cruelty. Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the defendant argues that, as the aggravating factor was neither alleged in the indictment nor proved before a jury, the trial court erred in sentencing him to an extended-term sentence.

In *Apprendi*, the court struck down a New Jersey statute that allowed the trial court to impose a five-year sentence beyond what normally would have been the statutory maximum if the court found

by a preponderance of the evidence that the defendant acted in order to intimidate an individual or group because of race, color, gender, or other similar factors. The court held that the New Jersey scheme defeated a defendant's right to have a jury determine that he is guilty of every element of an offense beyond a reasonable doubt. See *Apprendi*, 530 U.S. at 496-97, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366-67.

The defendant's contention is controlled by this court's recent decision in *People v. Chandler*, 321 Ill. App. 3d 292, 296 (2001), in which we held that a defendant, by pleading guilty, waived his right to argue that the State was obligated to prove beyond a reasonable doubt the factor that resulted in his longer sentence. This court explained:

> "Although defendant presents his *Apprendi* claim as a sentencing issue, the constitutional rights effectuated by that decision were the right to a jury trial and the right to have the State prove all the elements of the offense beyond a reasonable doubt. In others words, the argument that the Supreme Court accepted in *Apprendi* was not that Apprendi's sentence was too long but, rather, that defendant had a right to have a jury decide whether the State proved beyond a reasonable doubt the factor that resulted in the longer sentence. Here, defendant waived those rights by pleading guilty." *Chandler*, 321 Ill. App. 3d at 296-97.

Here, as the defendant waived a jury trial on all issues, the defendant cannot now claim that he was deprived of the right to have the jury determine the factor that led to his extended-term sentence. Similarly, he cannot now claim that he was unfairly deprived of the right to have the State prove that point beyond a reasonable doubt. See *Chandler*, 321 Ill. App. 3d at 297; see also *People v. Jackson*, 319 Ill. App. 3d 110, 113 (2001) (holding that defendant waived an *Apprendi* claim by pleading guilty).

The defendant's final contention on appeal is that he is entitled to an additional day of credit against his sentence. The State responds that this contention is waived because the defendant failed to raise it before the trial court. However, because the defendant's statutory right to receive *per diem* credit is mandatory, normal waiver rules do not apply. See *People v. Dieu*, 298 Ill. App. 3d 245, 249 (1998). Therefore, we will consider the merits of the defendant's contention.

It is well settled that a defendant is entitled to a credit against his sentence of imprisonment for any time spent in custody before the imposition of the sentence. 730 ILCS 5/5—8—7(b) (West 1996); *People v. Rinaldi*, 179 Ill. App. 3d 539, 546 (1989). Here, as the defendant requests, we take judicial notice of the official public records of the Department of Corrections. See *People v. Dupree*, 16 Ill. App. 3d 769, 771 (1974). These records indicate that the defendant's sentence is be-

ing calculated from a custody date of October 22, 1997. Our review of the record reveals that there is a conflict as to whether the defendant was taken into custody on October 21 or October 22, 1997. The defendant's presentence report and a Lake County sheriff's report indicate that the defendant was first taken into custody on October 22, 1997. However, at a hearing on the defendant's motion to suppress evidence, the trial court indicated that the defendant had been in custody since October 21, 1997.

Although this court may modify a defendant's sentence to provide him with the proper amount of statutory credit (see *People v. Smith*, 258 Ill. App. 3d 261, 267, 270 (1994)), we decline to do so, as we are unable to determine from the record the amount of time the defendant spent in custody prior to the imposition of sentence. Accordingly, we remand the cause for the trial court to determine how much time the defendant was in custody prior to the imposition of sentence and to award the defendant the corresponding amount of credit against his sentence. See *Rinaldi*, 179 Ill. App. 3d at 546.

For the foregoing reasons, the judgment of the circuit court of Lake County denying the defendant's motion to withdraw his guilty plea is affirmed. With respect to the issue of statutory credit, we remand the cause with directions that the trial court determine the proper amount of credit that the defendant is entitled to against his sentence.

Affirmed; cause remanded with directions.

McLAREN and GROMETER, JJ., concur.